**Jeremy PATTON**

v.

**COMMONWEALTH of Kentucky.**

No. 2012–CA–001977–MR.

Court of Appeals of Kentucky.

April 25, 2014.

Gene Lewter, Department of Public Advocacy, Frankfort, KY, for Appellant.

Jack Conway, Attorney General, Nate T. Kolb, Assistant Attorney General, Frankfort, KY, for Appellee.

Before JONES, LAMBERT, and STUMBO, Judges.

JONES, Judge:

Jeremy Patton brings this appeal from a Powell Circuit Court judgment following his entry of a plea of guilty to first-degree trafficking in a controlled substance. The entry of the plea was conditioned on Patton's right to appeal the circuit court's denial of his motion to suppress evidence. Having reviewed the record and pertinent law, we affirm.

## I. Factual & Procedural Background

On June 20, 2011, Kentucky State Trooper Eversole contacted the Powell County Sheriff's Office regarding his conversations with a confidential informant (the Informant). Trooper Eversole told Powell County Deputy Mark Reed that he had been contacted by the Informant and the Informant indicated that he could purchase narcotics from Patton. Based on this information, Deputy Reed received authorization from the Powell County Sheriff's Office to conduct a sting operation related to Patton.

Thereafter, Deputy Reed obtained cash money to use in the transaction with Patton; he then photocopied the money for subsequent identification. Deputy Reed then met with Trooper Eversole and the Informant in Wolfe County. Deputy Reed specifically inquired as to why the Informant was willing to participate in the sting since he was not under arrest or investigation. Trooper Eversole explained to Deputy Reed that the Informant indicated that Patton had been contacting the Informant in an effort to sell him drugs and the Informant simply wanted the phone calls to stop.

Deputy Reed then had the Informant sign the confidential informant agreements, wired him with a recording device, and supplied him with the money he previously photocopied to use in purchasing the narcotics from Patton. Deputy Reed also obtained a description of the Informant's vehicle and its tag number. Immediately prior to execution of the sting, Deputy Reed searched the Informant's person and vehicle for narcotics; he found none.

The Informant then left in his vehicle. While still in Wolfe County, the Informant picked up Patton and a female that was with Patton. Both Patton and the female got into the Informant's vehicle and the three individuals drove into Powell County. Using various units, law enforcement officers followed the vehicle. The Informant eventually parked the vehicle in David Ratliff's driveway.

Powell County Sheriff Danny Rogers then telephoned one of Ratliff's neighbors who had previously complained to the Sheriff's Office of suspected narcotics trafficking out of Ratliff's home. The neighbor confirmed that the Informant's vehicle was in front of Ratliff's home, the same home he had previously reported to police.

The Informant's vehicle remained parked in the driveway for several minutes. Thereafter, the Informant along with Patton and the female pulled out of

the driveway and back onto the road. Law enforcement officers then stopped the vehicle, as prearranged with the Informant. Law enforcement handcuffed the Informant, Patton, and the female and seated them on the roadside.

Deputy Reed then took the Informant aside and removed the recording device without listening to its contents. The Informant told Deputy Reed that he had given the money to Patton to purchase the narcotics and that Patton went inside Ratliff's house to do so. The Informant also informed Deputy Reed that after leaving Ratliff's house, Patton indicated that he had successfully purchased the narcotics. The Informant told Deputy Reed that he believed that Patton was still carrying the narcotics he purchased somewhere on his person.

After receiving this information, Deputy Reed approached Patton. Deputy Reed asked Patton if he had anything illegal on his person, frisked him, felt a pill bottle in his pocket, and removed it. Deputy Reed testified that the label on the bottle was partially obscured and difficult to read, but that it was possible that Patton's name was on the label. Deputy Reed then opened the bottle. Inside the bottle, he found two or three hydrocodone pills and eleven oxycodone pills. Deputy Reed then placed Patton under arrest. Patton was subsequently charged with trafficking in a controlled substance in the first degree[1] and with being a persistent felony offender in the second degree.[2] The Powell County Grand Jury returned an indictment on June 20, 2011.

On August 8, 2012, Patton moved the trial court to suppress evidence of the pills

Deputy Reed found inside the bottle. Patton argued that he was not under arrest at the time Deputy Reed searched him; Deputy Reed had no reason to suspect that the bottle contained a dangerous weapon; the bottle's contents were not in danger of being destroyed by Patton because Deputy Reed had possession of the bottle; and there were no other exigent circumstances justifying an immediate search of the bottle's contents. The Commonwealth countered that Deputy Reed had probable cause to arrest Patton even prior to discovery of the pills and that the search of the pill bottle was conducted incident to a lawful arrest.

The trial court conducted a suppression hearing on September 11, 2012. Deputy Reed was the only witness that testified at the hearing. He testified about his conversation with Trooper Eversole, obtaining the money, his meeting with Trooper Eversole and the Informant, and law enforcement's surveillance during the sting. He further testified that based on his roadside conversation with the Informant, he felt that Patton purchased the narcotics from Ratliff and still had them on his person.

The trial court denied Patton's suppression motion by order entered September 17, 2012. The trial court noted that while generally an arrest must precede the search, in some cases a search conducted prior to an arrest is valid if it is conducted contemporaneous with a lawful arrest. Based on Deputy Reed's testimony, the trial court concluded that Deputy Reed had probable cause to arrest Patton based on the "totality of circumstances" even prior to conducting the search of the pill bottle.

---

**1.** It was subsequently determined that the label on the pill bottle was for a hydrocodone prescription in Patton's name. As a result, Patton was charged only with respect to the oxycodone pills found in the bottle.

**2.** The persistent felony offender charge was subsequently dismissed.

Patton then entered a conditional guilty plea. This appeal followed.

## II. Standard of Review

■ This Court reviews a trial court's decision on a motion to suppress by applying a two-step analysis. *Goncalves v. Commonwealth,* 404 S.W.3d 180, 189 (Ky. 2013). First, we must determine if the trial court's findings of fact are supported by substantial evidence. *Id.* (citing *Adcock v. Commonwealth,* 967 S.W.2d 6 (Ky.1998); *Peyton v. Commonwealth,* 253 S.W.3d 504 (Ky.2008)). If so, the factual findings are conclusive. *Id.* Next, we conduct a *de novo* review of the trial court's application of the law to the facts to determine if the suppression decision was correct as a matter of law. *Goncalves,* 404 S.W.3d at 189.

In this case, the facts are undisputed. As such, we will proceed to conduct a *de novo* review of the trial court's application of those facts to the established law.

## III. Analysis

■ The Fourth Amendment to the United States Constitution, applicable to the states through the Fourteenth Amendment prohibits unreasonable searches and seizures.[3] "Warrantless searches are 'per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions.'" *Commonwealth v. Ousley,* 393 S.W.3d 15, 23 (Ky.2013) (quoting *Katz v. United States,* 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967) (footnote omitted)). "One such exception is the search incident to arrest, which allows an officer to conduct a warrantless post-arrest search of an arrestee's person as well as all areas within the arrestee's immediate control." *Frazier v. Commonwealth,* 406 S.W.3d 448, 457–58 (Ky.2013) (citing *Chimel v. California,* 395 U.S. 752, 763, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969)).

■ A warrantless search preceding an arrest is also reasonable under the Fourth Amendment "so long as probable cause to arrest existed before the search, and the arrest and search were substantially contemporaneous." *Williams v. Commonwealth,* 147 S.W.3d 1, 8 (Ky.2004) (internal citation omitted). "Once an officer has probable or reasonable cause, the officer may arrest the person without a warrant, and in such situations it is immaterial that a search of the person without a search warrant may precede his arrest." *Id.*

In this case, the determinative issue is whether Deputy Reed had probable cause to arrest Patton *before* searching the contents of the pill bottle on his person. If so, the trial court correctly concluded that under the facts the search and arrest occurred substantially contemporaneous with one another and Deputy Reed was entitled to search the contents of the pill bottle. *See Davis v. Commonwealth,* 120 S.W.3d 185, 193–94 (Ky.App.2003). If not, the warrantless search of the pill bottle would have been unreasonable under our prior case law. *See Commonwealth v. Jones,* 217 S.W.3d 190, 198 (Ky.2006) ("There is nothing inherently incriminating about carrying a pill bottle in one's pocket."); *Commonwealth v. Crowder,* 884 S.W.2d 649, 652 (Ky.1994) ("Although the officer was

---

**3.** Section Ten of the Kentucky Constitution also prohibits unreasonable searches and seizures. The Kentucky Supreme Court has consistently held "that the protections of Section 10 of the Kentucky Constitution are no greater than those of the federal Fourth Amendment." *Dunn v. Commonwealth,* 360 S.W.3d 751, 758 (Ky.2012); *Williams v. Commonwealth,* 364 S.W.3d 65, 68 (Ky.2011). Accordingly, we limit our review to a discussion of the propriety of the search under the Fourth Amendment to the United States Constitution.

entitled to put his hand on the suspect's pocket to feel for weapons, the officer's own testimony demonstrated that he did not immediately recognize the substance in question as cocaine, and that he recognized it only after further exploration of the suspect's pocket. This further exploration was not authorized by *Terry* or any other exception to the warrant requirement, and the seizure of the cocaine was therefore unconstitutional.").

■■■ "[P]robable cause is a flexible, common-sense standard." *Williams v. Commonwealth,* 147 S.W.3d 1, 7 (Ky.2004). "To determine whether an officer had probable cause to arrest an individual, we examine the events leading up to the arrest, and then decide whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to probable cause." *Maryland v. Pringle,* 540 U.S. 366, 371, 124 S.Ct. 795, 157 L.Ed.2d 769 (2003) (internal citation and quotation marks omitted). When probable cause is based in part on a tip from an informant, the "totality of the circumstances test requires a balancing of the relative indicia of reliability accompanying an informant's tip." *Lovett v. Commonwealth,* 103 S.W.3d 72, 78 (Ky.2003).

■■ Patton argues that there was no probable cause supporting his arrest prior to Deputy Reed's search of the pill bottle. He argues that the Informant was a previously unknown, unreliable individual with an admitted "agenda" against Patton; that Officer Reed had no information other than what the Informant had told him; and that the police had not independently observed any behavior by Patton that would support a finding of probable cause.

Patton asserts that the facts of his case are similar to those of *Florida v. J.L.,* 529 U.S. 266, 120 S.Ct. 1375, 146 L.Ed.2d 254 (2000). In that case, the only evidence supporting a stop and frisk by police was a tip from an anonymous informant that a young black male, wearing a plaid shirt and waiting at a bus stop, was carrying a gun. The Supreme Court held that such an anonymous tip, without more, is insufficient to justify a police officer's stop and frisk of that individual. "Unlike a tip from a known informant whose reputation can be assessed and who can be held responsible if her allegations turn out to be fabricated, . . . an anonymous tip alone seldom demonstrates the informant's basis of knowledge or veracity[.]" *Id.* at 270, 120 S.Ct. 1375 (internal citations and quotation marks omitted).

We are not so persuaded. In Patton's case, the Informant was not anonymous. Both Deputy Reed and Trooper Eversole knew his identity; they met with him prior to the sting, and he explained to them his reason for wishing to participate in a sting operation against Patton. The Kentucky Supreme Court has held that a tip from an identifiable informant, such as the Informant in this case, who could be subject to criminal liability if his story was later found to be fabricated, is "entitled to a greater presumption of reliability as opposed to the tips of unknown anonymous informants (who theoretically have nothing to lose)." *Commonwealth v. Kelly,* 180 S.W.3d 474, 477 (Ky.2005) (internal citation and quotation marks omitted).

"Indeed, many federal and state jurisdictions have held that tips provided by citizen informants who either (1) have face-to-face contact with the police; or (2) may be identified are generally competent to support a finding of reasonable suspicion (and in some cases, probable cause) whereas the same tip from a truly anonymous source would likely not have supported such a finding." *Id.* at 478. "Where the informant is known or where the informant relays information to an officer face-to-face, an officer can judge the credibility

of the tipster firsthand and thus confirm whether the tip is sufficiently reliable to support reasonable suspicion." *Id.* (citing *United States v. Perkins*, 363 F.3d 317, 323 (4th Cir.2004)).

Citing *Mash v. Commonwealth*, 2010 WL 1005903 (Ky.2010)(2008–SC–000951–MR), Patton argues that Deputy Reed had no identifiable basis upon which to believe that the Informant was reasonably reliable. In *Mash*, two incarcerated informants, one of whom had already provided police with information leading to another arrest, told police that they had purchased drugs from Mash on numerous occasions. The police arranged for one of the informants to telephone Mash and arrange a drug buy. In the taped conversation, Mash recognized drug jargon used by the informant and knew the location of her home. Police tracked Mash's vehicle to the informant's home. Mash was frisked by one of the officers, who recovered a baggie of cocaine and a large amount of cash. The officer then arrested Mash. In upholding the search, the Court explained:

> In this case, the tips, coming as they did from known informants, contained "sufficient objective indicia of reliability." The corresponding nature of the tips from two separate informants, that Appellant had engaged in many cocaine transactions with each of them, served to verify one another's tip. Furthermore, Taylor had already demonstrated her reliability by contributing information to a previous arrest. Most importantly, Dike's claim to have regularly bought cocaine from Appellant was strongly corroborated by their revealing telephone conversation. Through that conversation, Appellant confirmed, albeit tacitly, that he (1) was familiar with the informant on a first-name basis, (2) knew where the informant lived, (3) knew what an "eight ball" was, and (4) was readily able and willing to deliver an "eight ball" to her. Dike's account of frequent transactions with Appellant was further endorsed by Appellant's quick arrival at her trailer and his admission to Detective Riddle that he was there to see "Olivia." The police had sufficient confirmation to rely on the two informants.

*Id.* at *3.

Patton asserts that unlike the facts in *Mash*, the facts of his case do not suggest sufficient indicia of reliability to justify probable cause to arrest him prior to Deputy Reed's search of the pill bottle. He argues that here there was only one informant who had never demonstrated any prior reliability, did not predict Patton's future behavior, and whose information about Patton was not corroborated.

■ "Typically, a bare and uncorroborated tip received from a confidential informant, without more, would be insufficient to establish probable cause for a search warrant." *Lovett v. Commonwealth*, 103 S.W.3d 72, 78 (Ky.2003). However, this case presents far more than a "bare and uncorroborated tip." Deputy Reed met with the Informant; the Informant agreed to wear a recording devise; Deputy Reed supplied the Informant with cash to give to Patton to make a narcotics purchase; law enforcement observed the Informant pick up Patton and drive to a location where a neighbor had previously reported suspected narcotics trafficking taking place to police; law enforcement verified with the neighbor that the Informant's car was parked in the driveway of that same location; and upon questioning by Deputy Reed, the Informant indicated that Patton had taken the cash, gone into the house to purchase the narcotics, and indicated to the Informant that he had successfully completed the transaction. In light of these circumstances, we believe

that Deputy Reed had sufficient objective indicia of the Informant's reliability to rely on his statements.

Having examined the events leading up to the arrest, including the Informant's statements and the observations of the police, we believe that an objectively reasonable police officer would have believed that Patton had committed a felony even prior to the discovery of the pills. The police were acting on the information of a known and identifiable informant; the Informant told police that Patton had been trying to sell him drugs; the Informant's automobile, carrying Patton and another female, stopped at the house of an individual that an identified neighbor had complained to police was the site of narcotics trafficking; Patton entered the house and then left after a short time, suggesting that the pre-planned purchase of drugs had occurred; police stopped the car immediately after it left the residence and the Informant told Deputy Reed that Patton had taken the purchase money, had gone inside the house to purchase narcotics, and still had the narcotics on his person.

## IV.  Conclusion

For the foregoing reasons, we affirm.

ALL CONCUR.