RENDERED: SEPTEMBER 4, 2020; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2019-CA-000974-MR

RAYMOND DESHAWN WILSON          APPELLANT

v.      APPEAL FROM FAYETTE CIRCUIT COURT
HONORABLE THOMAS L. TRAVIS, JUDGE
ACTION NO. 18-CR-00218-002

COMMONWEALTH OF KENTUCKY          APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: CALDWELL, DIXON, AND L. THOMPSON, JUDGES.

DIXON, JUDGE: Raymond Deshawn Wilson appeals from the order of the

Fayette Circuit Court denying his motion to suppress, judgment on a conditional

guilty plea, and final judgment and sentence entered on November 28, 2018, May

24, 2019, and May 31, 2019, respectively. Following review of the record, briefs,

and law, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

On January 4, 2018, the Lexington Police Department executed a search warrant at an apartment on Old Todds Road. During the search, officers discovered firearms, narcotics, and a key which one of the officers recognized as a key to a storage unit at Space Center Storage. The officers also found mail addressed to Lemon Jones, as well as a receipt from Space Center Storage bearing a specific unit number. Based on the narcotics and firearms found near the key, officers believed the storage unit (often used as a hub for distributing firearms and narcotics throughout the city) might contain more contraband.

The officers went to the storage unit and discovered that the key fit the lock. Before opening the door, Detectives Cobb and Shortridge left the unit to obtain a search warrant. In the meantime, Detective Charles Johnson of the Narcotics Unit, a plainclothes officer in an unmarked vehicle, was assigned to conduct surveillance of the unit. While Detective Johnson was waiting, a red SUV pulled up next to his vehicle. The driver moved the vehicle erratically and positioned the headlights to shine into Detective Johnson's vehicle before bolting from the parking lot.

Detective Johnson followed the SUV and was able to get the license plate number. He alerted Detectives Cobb and Shortridge and returned to the storage unit. Officer Adam Acree was on his beat in the area of Space Center

Storage when the detectives contacted him. Officer Acree stated that he was not asked to stop the SUV but was asked to run the plate. (Sergeant David Flannery, who subsequently arrived on the scene, testified that Officer Acree was ordered to stop the SUV.)

Officer Acree ran the license plate, and the system alerted him that "New owner failed to transfer registration." He later spotted the SUV and initiated a traffic stop. Officer Acree approached the vehicle and asked for the driver's license and identification. The driver, Raymond Wilson, was initially uncooperative, refusing to roll down the window or give the officer his license or registration. Eventually, Wilson rolled down the window and said that he did not have a driver's license but provided a Social Security number. Officer Acree checked the Social Security number twice, and it did not return anything. He then requested Wilson's name and date of birth. Wilson finally produced a Michigan driver's license.

Sergeant Flannery and K-9 Officer Patrick Murray, and his dog Echo, arrived on the scene while Officer Acree was attempting to get Wilson's information. Sergeant Flannery went to the passenger side of the vehicle and smelled marijuana through a cracked window. Officer Murray also smelled marijuana so strongly that he determined it was not necessary to have Echo sniff the vehicle.

- 3 -

The officers ordered everyone out of the vehicle, conducted a search, and found marijuana, heroin, and multiple firearms. Lemon Jones, a passenger in the vehicle, fled; Wilson and the other occupants were cuffed and placed under arrest.

On February 20, 2018, Wilson was indicted on charges of aggravated first-degree trafficking in a controlled substance,[1] first-degree trafficking in a controlled substance,[2] being a convicted felon in possession of a handgun,[3] receiving stolen property,[4] failure to register a transfer of a motor vehicle,[5] and possession of marijuana.[6]

Wilson filed a motion to suppress, stating that the vehicle search violated the Fourth Amendment to the United States Constitution and Section 10 of the Kentucky Constitution. The trial court denied the motion to suppress on November 28, 2018. The court's order specified that the failure to properly transfer registration was a valid reason to stop the vehicle, and the plain smell of

---

[1] Kentucky Revised Statutes (KRS) 218A.142, a Class B felony.

[2] KRS 218A.1412, a Class C felony.

[3] KRS 527.040, a Class C felony.

[4] KRS 514.110, a Class D felony.

[5] KRS 186.190, a Class A misdemeanor.

[6] KRS 218A.1422, a Class B misdemeanor.

marijuana by officers was a valid exception to the warrant requirement, which permitted search of the vehicle.

On May 24, 2019, Wilson entered a conditional guilty plea to the charge of being a convicted felon in possession of a handgun, with dismissal of all other charges. On May 31, 2019, the trial court issued its final ruling sentencing Wilson to five years' imprisonment. Wilson was permitted to preserve the right to appeal the denial of the motion to suppress to this Court.

**STANDARD OF REVIEW**

The standard for appellate review of trial court rulings on pretrial motions to suppress evidence is well-settled. Pursuant to RCr[7] 8.27,

> [w]e apply the same two-step process adopted in *Adcock v. Commonwealth*, 967 S.W.2d 6, 8 (Ky. 1998). First, we review the trial court's findings of fact, which are deemed to be conclusive, if they are supported by substantial evidence. Next, we review *de novo* the trial court's application of the law to the facts to determine whether its decision is correct as a matter of law.

*Maloney v. Commonwealth*, 489 S.W.3d 235, 237 (Ky. 2016). Substantial evidence is defined as "that which, when taken alone or in light of all the evidence, has sufficient probative value to induce conviction in the mind of a reasonable person." *Bowling v. Nat. Res. and Envtl. Prot. Cabinet*, 891 S.W.2d 406, 409 (Ky. App. 1994).

---

[7] Kentucky Rules of Criminal Procedure.

**VALID TRAFFIC STOP**

Wilson argues that the failure to transfer registration was an invalid reason for Officer Acree to stop the vehicle; therefore, all evidence from the search should be suppressed. However, because the officer had probable cause to believe that a traffic violation had occurred, we conclude the traffic stop was valid.

"The Fourth Amendment to the United States Constitution, applicable to the states through the Fourteenth Amendment prohibits unreasonable searches and seizures." *Patton v. Commonwealth*, 430 S.W.3d 902, 906 (Ky. App. 2014) (footnote omitted). "It is well-established that the stopping of a vehicle and detaining of its occupants amounts to a seizure under the Fourth Amendment of the United States Constitution and under Section 10 of the Kentucky Constitution." *Garcia v. Commonwealth*, 185 S.W.3d 658, 661-62 (Ky. App. 2006). However,

> [i]t has long been considered reasonable for an officer to conduct a traffic stop if he or she has probable cause to believe that a traffic violation has occurred. *Commonwealth v. Bucalo*, 422 S.W.3d 253, 258 (Ky. 2013) (citing *Wilson v. Commonwealth*, 37 S.W.3d 745 (Ky. 2001)).

*Davis v. Commonwealth*, 484 S.W.3d 288, 291 (Ky. 2016).

Officer Acree stopped the SUV based on information that the driver failed to transfer the vehicle he was driving. The Kentucky Supreme Court has recognized that probable cause or reasonable suspicion is not needed to conduct a license plate search. *Traft v. Commonwealth*, 539 S.W.3d 647 (Ky. 2018). This

failure to transfer was a violation of KRS 186A.215, which requires that any transfer of ownership of a vehicle be recorded with the county court clerk's office within 15 days of purchase. Failure to transfer a vehicle within 15 days is a Class A misdemeanor punishable by up to 12 months in jail and up to a $500 fine. KRS 186A.990.

While there is no specific case law stating whether this is a valid reason to stop a vehicle, there are other less serious traffic violations that have been considered valid to conduct a traffic stop. For example, failure to illuminate a license plate, improper tinting, and most analogously, failure to renew license plates, have been found to be a sufficient basis for officers to stop a vehicle. *Greer v. Commonwealth*, 514 S.W.3d 566 (Ky. App. 2017); *West v. Commonwealth*, 358 S.W.3d 501 (Ky. App. 2012); *Johnson v. Commonwealth*, 179 S.W.3d 882 (Ky. App. 2005), *overruled on other grounds by Davis*, 484 S.W.3d 288.

Wilson argues that this violation has nothing to do with safety, and a law regarding levying taxes and record keeping should not be a valid reason to conduct a traffic stop. However, as previously noted, police routinely stop drivers for failure to renew license plates or illuminate them. Both are issues of tax and record keeping as opposed to safety. A safety issue is not required for a stop to be valid, only a traffic violation.

Additionally, Wilson contends that Officer Acree's proffered reason for the stop was merely pretext. However, it matters not if it was pretextual.

> As long as an officer "has probable cause to believe a civil traffic violation has occurred, [he] may stop [the] vehicle regardless of his or her subjective motivation in doing so," *Id.* (quoting *Wilson*, 37 S.W.3d at 749); *see also Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)[.]

*Davis*, 484 S.W.3d at 291. Here, Officer Acree knew that the driver had failed to transfer the vehicle registration by running its license plate. Failure to transfer registration is a misdemeanor. The license plate check from Officer Acree's computer showed nothing to alert him that the vehicle was still in the grace period. The information provided by the county court clerk's office, while not a guarantee, did provide enough basis for the stop.

## INVESTIGATORY STOP

Even absent probable cause to conduct a stop based on the failure to transfer, the United States Supreme Court has held that a brief investigatory stop of a person by police does not automatically give rise to a Fourth Amendment violation. In determining the reasonableness of a *Terry* investigatory stop, this Court has stated, "[w]here probable cause is lacking, the forceable encounter or stop of a citizen by a police officer must arise from a reasonable articulable suspicion that criminal activity is afoot." *Docksteader v. Commonwealth*, 802 S.W.2d 149, 150 (Ky. App. 1991) (citing *Terry*, 392 U.S. at 22, 88 S.Ct. at 1880).

"An investigatory stop must be justified by some objective manifestation that the person stopped is, or is about to be, engaged in criminal activity." *United States v. Cortez*, 449 U.S. 411, 417, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981) (citations and footnote omitted); *Taylor v. Commonwealth*, 987 S.W.2d 302, 305 (Ky. 1998). A reviewing court must bear in mind the totality of the circumstances when determining whether the officer had a reasonable suspicion. *Terry*, 392 U.S. at 19, 88 S.Ct. at 1878.

A traffic stop is considered a seizure under the Constitution. *Rodriguez v. United States*, 575 U.S. 348, 354, 135 S.Ct. 1609, 1614, 191 L.Ed.2d 492 (2015). "Like a *Terry* stop, the tolerable duration of police inquiries in the traffic-stop context is determined by the seizure's 'mission'—to address the traffic violation that warranted the stop . . . and attend to related safety concerns[.]" *Id.* (citations omitted). "Authority for the seizure thus ends when tasks tied to the traffic infraction are—or reasonably should have been—completed." *Id.* (citation omitted).

Here, there was sufficient evidence to support a reasonable suspicion that a person was engaged, or about to be engaged, in criminal activity. Reasonable suspicion is not a particularly burdensome standard. "While a mere 'hunch' is insufficient to justify a stop, the likelihood of criminal activity need not rise to the level required for probable cause, and it falls considerably short of

satisfying a preponderance of the evidence standard." *Commonwealth v. Marr*, 250 S.W.3d 624, 627 (Ky. 2008) (internal quotation marks and citation omitted).

First, the SUV arrived at a storage unit where illegal activity was suspected. When police officers found the storage unit key, coupled with the firearms and narcotics, they knew, based upon their experience, the unit was potentially a central hub for distribution of firearms and narcotics. Officers were aware that the owners might attempt to destroy or move the evidence, so they placed the storage unit under surveillance. The specific criminal activity at this location, coupled with Wilson's erratic behavior, are indicative that this was not an investigative search conducted simply because the SUV was in a high-crime area. Rather, this was an investigative search due to proximity to the storage unit where police were obtaining a warrant to search for firearms and narcotics.

The erratic behavior of the driver alone gave officers reason for an investigatory stop. "[N]ervous, evasive behavior is a pertinent factor in determining reasonable suspicion." *Illinois v. Wardlow*, 528 U.S. 119, 124, 120 S.Ct. 673, 676, 145 L.Ed.2d 570 (2000). The driver engaged in irregular behavior, making several maneuvers with the vehicle before finally pointing the headlights at the windshield of Detective Johnson's vehicle. He then turned and bolted for the exit. Even though Wilson did not know that Detective Johnson, in plain clothes

and an unmarked vehicle, was a police officer, he still behaved unusually upon noticing another vehicle in the area.

Therefore, looking at the totality of the circumstances, the erratic and evasive behavior, accompanied by the location of the red SUV, gave rise for reasonable suspicion sufficient to justify an investigative stop.

## SEARCH OF THE VEHICLE

The failure to transfer and reasonable suspicion make the initial traffic stop constitutional under the Fourth Amendment to the United States Constitution and Section 10 of the Kentucky Constitution. Thereafter, however, the officer must have at least reasonable suspicion that criminal activity is afoot to search a vehicle and to extend the stop longer than necessary to address the initial traffic violation.

"It is fundamental that all searches without a warrant are unreasonable unless it can be shown that they come within one of the exceptions to the rule that a search must be made pursuant to a valid warrant." *Cook v. Commonwealth*, 826 S.W.2d 329, 331 (Ky. 1992) (citation omitted). *See also Commonwealth v. Ousley*, 393 S.W.3d 15, 23 (Ky. 2013). The Commonwealth bears the burden to demonstrate that the warrantless searches fall within a recognized exception. *Gallman v. Commonwealth*, 578 S.W.2d 47, 48 (Ky. 1979).

Kentucky courts have recognized an exception to the warrant requirement called "plain smell." It is analogous to the "plain view" doctrine by which a police officer may infer probable cause that an offense has been or is being committed based upon his sense of smell. *Cooper v. Commonwealth*, 577 S.W.2d 34, 37 (Ky. App. 1979), *overruled on other grounds by Mash v. Commonwealth*, 769 S.W.2d 42 (Ky. 1989). Further, this Court made clear that "the smell of marijuana coming from a person's vehicle also g[ives] an officer probable cause to search the person." *Dunn v. Commonwealth*, 199 S.W.3d 775, 777 (Ky. App. 2006).

The plain smell doctrine is a valid exception to the warrant requirement. Therefore, when Sergeant Flannery and Officer Murray smelled marijuana emanating from the vehicle, so strongly that Officer Murray did not feel the need to use the drug-sniffing dog, probable cause existed to believe that the passengers were in possession of an illegal substance, and a search of the persons and the vehicle was proper. Therefore, we conclude the search of the vehicle was valid.

## CONCLUSION

Officers had probable cause to make a traffic stop based on the information retrieved by Officer Acree that the vehicle had failed to transfer. Reasonable suspicion existed to make an investigatory stop, and the subsequent

search of the vehicle was valid because officers plainly smelled marijuana through a cracked window of the vehicle. Therefore, and for the foregoing reasons, the orders entered by the Fayette Circuit Court are hereby affirmed.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Stephen J. Buck
Kayla Deatherage
Frankfort, Kentucky

BRIEF FOR APPELLEE:

Daniel Cameron
Attorney General of Kentucky

M. Brandon Roberts
Assistant Attorney General
Frankfort, Kentucky