RENDERED: MARCH 4, 2022; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2020-CA-1479-MR

LAMONT CORTEZ WOODS        APPELLANT

|  | APPEAL FROM WARREN CIRCUIT COURT |
| v. | HONORABLE JOHN R. GRISE, JUDGE |
|  | ACTION NO. 19-CR-01475 |

COMMONWEALTH OF KENTUCKY        APPELLEE

AND

NO. 2021-CA-0205-MR

LAMONT CORTEZ WOODS        APPELLANT

|  | APPEAL FROM WARREN CIRCUIT COURT |
| v. | HONORABLE JOHN R. GRISE, JUDGE |
|  | ACTION NO. 19-CR-01474-004 |

COMMONWEALTH OF KENTUCKY        APPELLEE

\*\* \*\* \*\* \*\* \*\*

BEFORE: COMBS, DIXON, AND TAYLOR, JUDGES.

DIXON, JUDGE: Lamont Cortez Woods appeals the order of the Warren Circuit Court denying defendant's motion to suppress, entered November 2, 2020. After careful review of the briefs, record, and law, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

On October 7, 2019, Warren County's 911 dispatch received a call from Tanya Pulley who reported hearing three or four gunshots fired outside of a residence at 1157 Crewdson Drive and seeing two males leave separately down Barren River Road. Pulley identified Woods, a black male, as one of the two individuals and described Woods as driving a "golf cart thing."

Police, including Officer Barbiea, responded to the residence where three individuals were present. One of the individuals, Ashley Hopkins, informed police that Woods, who lived at the residence, was expected back anytime and denied that Woods had a gun. Police observed a bullet hole in a wall of the residence as well as a bullet casing. Barbiea executed a sweep of the house looking for injured individuals; none were found. Thereafter, Barbiea left the residence.

Less than ten minutes later, Barbiea encountered a man matching Woods' description driving a Polaris UTV a couple of blocks from Woods' residence. After circling back, Barbiea observed that the Polaris had been left idling by the side of the road and the driver was walking away. Barbiea exited his vehicle with his weapon drawn and made contact. The driver, who had turned back toward the Polaris, identified himself as Woods and denied being at his residence or having a firearm on his person. Ultimately, as police commenced a frisk of his person, Woods admitted he had a firearm in a fanny pack. Police discovered that Woods was a convicted felon, that the Polaris was stolen and, after a more thorough search, that Woods was in possession of methamphetamines, heroin, and a glass pipe.

Woods was indicted on charges of trafficking in a controlled substance, first degree, first offense;[1] possession of a controlled substance, first degree, first offense;[2] possession of drug paraphernalia;[3] receiving stolen property

---

[1] Kentucky Revised Statutes (KRS) 218A.1412.

[2] KRS 218A.1415.

[3] KRS 218A.500.

under $10,000;[4] possession of a firearm by a convicted felon;[5] and of being a persistent felony offender in the first degree.[6]

Woods moved to suppress the discovery of the bullet casing, the firearm, the controlled substances, and the glass pipe. A hearing was held at which Barbiea was the sole witness. Barbiea testified that Woods was not free to walk away when he stopped Woods with his weapon drawn. Barbiea could not recall if he personally saw the bullet hole or casing at Woods' residence or if anyone there had corroborated that shots had been fired. He confirmed that police had not identified an injured party or discovered evidence of an injury, such as blood, at the scene. Barbiea stated that he stopped Woods to determine whether he was injured and why shots were fired. When asked repeatedly what crime he suspected Woods had committed to justify the stop, Barbiea conceded that he did not know all of the charges at the time as it was an ongoing investigation; however, because there was a report of shots fired within city limits, which is an ordinance violation, police were still investigating to see if the facts supported charges for wanton endangerment, robbery, or possession of a firearm by a convicted felon – which Barbiea believed Woods to be. At the end of the hearing, the Commonwealth

---

[4] KRS 514.110.

[5] KRS 527.040.

[6] KRS 532.080.

noted that it had submitted copies of the 911 call, Barbiea's body cam footage from the residence, and body cam footage of Barbiea's and Bowman's (a second officer) interactions with Woods.

The court denied the suppression motion, concluding that reasonable articulable suspicion supported both the stop and frisk of Woods. Thereafter, Woods entered a conditional guilty plea to two counts of possession of a controlled substance, first degree, in No. 19-CR-1474-004 and possession of a handgun by a convicted felon in No. 19-CR-1475 for a combined sentence of eleven years. Woods argues that the evidence obtained during his interaction with police must be excluded where Barbiea did not have a reasonable and articulable suspicion to justify stopping him. *Wong Sun v. United States*, 371 U.S. 471, 88 S. Ct. 407, 9 L. Ed. 2d 889 (1963). Additional facts will be introduced as they become relevant.

## STANDARD OF REVIEW

"The Fourth Amendment to the United States Constitution, applicable to the states through the Fourteenth Amendment[,] prohibits unreasonable searches and seizures." *Patton v. Commonwealth*, 430 S.W.3d 902, 906 (Ky. App. 2014) (footnote omitted). However, in *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889(1968), the United States Supreme Court held that police may execute a brief investigative stop, wherein a citizen may be detained and frisked for weapons, if there is reasonable articulable suspicion of criminal activity.

Reasonable suspicion requires more than a mere hunch, but the requisite likelihood of criminal activity need not rise to the level of probable cause and is considerably less than preponderance of the evidence. *United States v. Arvizu*, 534 U.S. 266, 122 S. Ct. 744,151 L. Ed. 740 (2002); *Commonwealth v. Banks*, 68 S.W.3d 347 (Ky. 2001). A reviewing court must bear in mind the totality of the circumstances "to see whether the detaining officer has a particularized and objective basis for suspecting legal wrongdoing." *Arvizu*, 534 U.S. at 273, 122 S. Ct. at 750 (internal quotation marks omitted). Accordingly, a court "must consider all of the officer(s) observations and give due regard to inferences and deductions drawn by them from their experience and training." *Baltimore v. Commonwealth*, 119 S.W.3d 532, 539 (Ky. App. 2003).

Our review of the denial of a motion to suppress is twofold. "First, we review the trial court's findings of fact under a clearly erroneous standard. Under this standard, the trial court's findings of fact will be conclusive if they are supported by substantial evidence. We then conduct a *de novo* review of the trial court's application of the law to the facts to determine whether its decision is correct as a matter of law." *Whitlow v. Commonwealth*, 575 S.W.3d 663, 668 (Ky. 2019) (quoting *Simpson v. Commonwealth*, 474 S.W.3d 544, 547 (Ky. 2015)).

# ANALYSIS

In arguing that the court's denial of suppression was in error, Woods raises two specific claims: (1) the court's findings of fact are not supported by the evidence, and (2) the facts do not establish reasonable articulable suspicion.

Regarding his first claim, Woods argues the court erred in finding that his residence was in a densely-populated area and a city neighborhood. In support, Woods notes that from the video, it is clear that the property is large, containing both a barn and a bamboo forest; the area has a roaming peacock; and a gun range is in close enough proximity that the officers commented on the noise. Woods argues that these factors are incompatible with the court's findings. We disagree. Barbiea testified repeatedly that discharging a firearm at Woods' residence violated a city ordinance; hence, the residence was within the city. Further, the body camera footage reveals multiple households along the road fronting Woods' residence and a complex of multi-family dwellings a block away where the arrest was ultimately made. Therefore, we cannot say that these findings are unsupported by substantial evidence.

Woods next contends that the court's findings regarding statements made by Ashley Hopkins are unsupported by the record. On this claim, we agree. Mirroring the statement of facts presented in the Commonwealth's response to the suppression motion, the court found that Hopkins informed officers at the

residence that: she was Woods' wife, that Woods and "Shane" had possessed a handgun, and that Shane had fired the gun in the air multiple times to prove to her that it was operational. While the audio from Barbiea's body camera can be difficult to discern, after a thorough review, we are confident the footage submitted to the court does not contain these disclosures. Additionally, Barbiea testified he was unable to recall any statements made at the residence. Accordingly, these findings are clearly erroneous. However, as the Commonwealth correctly argues, because the court did not consider or rely on the challenged statements in its analysis of whether Woods had been subjected to a valid *Terry* stop, the error is harmless.

Finally, Woods challenges the court's application of the facts to the law where it concluded Barbiea had a reasonable articulable suspicion to justify the seizure of Woods. Woods asserts Barbiea's vague justifications for the stop, including looking for an injured party and the violation of a city ordinance, were insufficient where there was no evidence of a victim and the violation did not rise to the level of a crime. Further, Woods takes umbrage with the court's determination that it is a reasonable presumption that shots fired in a city neighborhood are for nefarious, and not benign, purposes.

In denying suppression, the court found that officers discovered a bullet hole in a wall and a shell casing at the residence;[7] the stop occurred thirty minutes after a report of multiple shots being fired at a residence within city limits; Woods matched the description of the person identified as leaving the residence; the description was unique due to the vehicle not being common in the area; and it was reasonable for police to believe that a crime, such as wanton endangerment, may have been committed. We agree with the court. Contrary to Woods' position, even without an apparent victim, a bullet hole in the wall of a residence gives rise to a reasonable assumption that unlawful activity may have occurred and, under these facts, that Woods may have had pertinent information. Accordingly, looking at the totality of the circumstances, we cannot conclude that the court erred in determining that Barbiea had reasonable suspicion sufficient to justify an investigative stop.

## CONCLUSION

Therefore, and for the foregoing reasons, the order entered by the Warren Circuit Court is AFFIRMED.


ALL CONCUR.

---

[7] We do note that while the court made two references to a bullet hole and a shell casing being found at the residence, the court also made a conflicting finding that no bullets or casings were found. We disregard this conflicting finding as it is wholly contrary to the evidence.

BRIEFS FOR APPELLANT:

Jennifer Wade
Frankfort, Kentucky

BRIEF FOR APPELLEE:

Daniel Cameron
Attorney General of Kentucky

Stephanie L. McKeehan
Assistant Attorney General
Frankfort, Kentucky