**COMMONWEALTH of Kentucky, Appellant,**

v.

**Michael KELLY, Appellee.**

**No. 2004–SC–0385–DG.**

Supreme Court of Kentucky.

Dec. 22, 2005.

Gregory D. Stumbo, Attorney General, George G. Seelig, Courtney J. Hightower, Assistant Attorney General, Office of Attorney General, Criminal Appellate Division, Frankfort, for Appellant.

Robin L. Webb, Grayson, for Appellee.

GRAVES, Justice.

Appellee, Michael Kelly, was indicted on three counts of trafficking in a controlled substance and one count of driving under the influence. Appellee moved to dismiss the indictments, arguing that the evidence supporting his indictments was seized in violation of his right to be free from unreasonable seizures. U.S. Const. amend. IV and XIV; Ky. Const. § 10. The trial court granted Appellee's motion, finding that the evidence should be suppressed due to the

fact that it was obtained as the result of an unlawful seizure. The Commonwealth appealed. The Court of Appeals affirmed the trial court's order in a two to one (2–1) vote.[1] We granted discretionary review and for the reasons set forth herein, we now reverse the decision of the Court of Appeals.

The facts, as presented before the trial court indicated the following: On October 10, 2002, Lexington police received a call from two persons who identified themselves simply as Waffle House employees. The employees reported that they suspected a recent patron of their restaurant of being intoxicated and that the suspect was about to drive away from the restaurant. They stated their location and gave details about the suspect and his vehicle. The suspect was described as being a white male and the vehicle was identified as being a red, older model Camaro with Tennessee tags. Lexington dispatch immediately disseminated the information through an "attempt to locate" broadcast which was sent to all police cruisers in the area. Officer Hilton Hastings responded to the broadcast and drove to the Waffle House restaurant.

Shortly after responding to the broadcast, Officer Hastings arrived at the Waffle House location reported by the callers. Upon pulling into the parking lot, Officer Hastings saw two people standing outside whom he assumed were the employees who had reported the suspected drunk driver. Upon seeing the police vehicle, the two people then started pointing in the direction of a night club across the street from the restaurant. When Officer Hastings looked toward the area where the people were pointing, he immediately spotted a red, older model Camaro. Officer Hastings drove across the street to the night club and followed the Camaro to a

nearby hotel. He then activated his emergency lights and proceeded to conduct an investigatory stop of the vehicle and its driver, who identified himself as Appellee, Michael Kelly.

Officer Hastings candidly stated that prior to stopping Appellee's vehicle, he did not personally observe any criminal or suspicious activity on the part of Appellee. However, once the vehicle was stopped, he did detect a strong smell of alcohol emanating from the vehicle. He also conducted several field sobriety tests which Appellee failed. The officer then searched Appellee's person and found thirty-eight (38) Oxycontin pills, $2,800 in cash, and another pill bottle. A search of the vehicle revealed more pills and a gun. At this point, Appellee was arrested and later indicted on three counts of trafficking and one count of driving under the influence. The trial court found that the initial stop of Appellee's vehicle was unlawful and dismissed the indictments. The Commonwealth now appeals the trial court's ruling to this Court. For the reasons set forth below, we vacate the trial court's order and remand for further proceedings.

## I. LAWFULNESS OF THE INVESTIGATORY STOP

■ It is well-established that investigatory stops, such as the one performed by Officer Hastings in this case, are permissible if the officer has reasonable and articulable suspicion that a violation of the law is occurring. *Collins v. Commonwealth*, 142 S.W.3d 113, 115 (Ky.2004) (citing *Delaware v. Prouse*, 440 U.S. 648, 663, 99 S.Ct. 1391, 1401, 59 L.Ed.2d 660, 673 (1979)). When reviewing a trial court's order regarding whether certain evidence should be suppressed, we defer to the trial court's factu-

---

1. Judge Combs dissented.

al findings unless they are clearly erroneous and we review *de novo* the trial court's application of the law to the facts found. *Welch v. Commonwealth*, 149 S.W.3d 407, 409 (Ky.2004).

In this case, there seems to be no dispute as to the facts as they have been recounted herein. Rather, the parties dispute whether the facts amount to "reasonable suspicion," and specifically, whether the tip should be classified as "anonymous." Both of these determinations involve applying law to the facts found, and thus, we review these questions *de novo*. *See, e.g., Commonwealth v. Banks*, 68 S.W.3d 347, 349 (Ky.2001), *United States v. Pasquarille*, 20 F.3d 682, 687 (6th Cir. 1994).

We find that the setting and circumstances of this case do not support a conclusion that the tip was truly "anonymous." While the tipsters did not give their names, they (1) identified themselves as employees of the Waffle House restaurant; and (2) provided the location of the particular restaurant where they worked. This information alone raises a strong presumption that these informants could likely be located in the event that their tip was determined to be false or made for the purpose of harassment. However, in addition to the identifying information given over the telephone, Officer Hastings reasonably believed that he had face-to-face contact with the actual tipsters when he pulled into the parking lot of the restaurant and observed two people (1) waiting outside for him; and (2) pointing toward a vehicle that had the same description as the one provided in the dispatch broadcast. *Cf. State v. Ramey*, 129 Ohio App.3d 409, 717 N.E.2d 1153, 1158 (Oh.App.1998) ("There is nothing even remotely anonymous, clandestine, or surreptitious about a citizen stopping a police officer on the street to report criminal activity."). When all these facts are considered in their totality (including and especially the pre-detention investigation which verified most of the information given by the tipsters), it is clear to us that this tip was generated from identifiable informants as opposed to anonymous informants.

■ The significance of whether this tip was generated from "anonymous" informants or not bears upon our overall determination of reliability. In *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), the United States Supreme Court stated that "an informant's 'veracity,' 'reliability' and 'basis of knowledge' are all highly relevant in determining the value of his report." *Id.* at 230, 103 S.Ct. at 2328. When determining whether a set of facts is sufficient to generate reasonable suspicion, we must look at the totality of the circumstances in each case. *Alabama v. White*, 496 U.S. 325, 330, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990).

■ In cases involving identifiable informants who could be subject to criminal liability if it is discovered that the tip is unfounded or fabricated, such tips are entitled to a greater "presumption of reliability" as opposed to the tips of unknown "anonymous" informants (who theoretically have "nothing to lose"). *See Florida v. J.L.*, 529 U.S. 266, 276, 120 S.Ct. 1375, 1381, 146 L.Ed.2d 254 (2000) (Kennedy, concurring) ("the ability of the police to trace the identity of anonymous telephone informants may be a factor which lends reliability to what, years earlier, might have been considered unreliable anonymous tips"). Moreover, the tip in this case is entitled to even greater deference than it normally might be accorded due to its status as a "citizen informant" tip. *See Gates, supra* at 233, 103 S.Ct. at 2330 ("rigorous scrutiny of the basis of [a citizen informant's] knowledge [is] unnecessary").

What distinguishes a "citizen informant" tip from other types of tips is the fact that such tipsters are almost always bystanders or eyewitness-victims of the alleged criminal activity. *Pasquarille, supra,* at 689 ("Thus, because the informant's account was based on firsthand observations as opposed to idle rumor or irresponsible conjecture, we presume that the statements are reliable.") (internal quotations and citations omitted); *see also, Gates, supra,* at 233–35, 103 S.Ct. 2317 ("[E]ven if we entertain some doubt as to an informant's motives, his explicit and detailed description of wrongdoing, along with a statement that the event was observed firsthand, entitles his tip to greater weight than might otherwise be the case."). "Whereas other informants, who are often intimately involved with the persons informed upon and with the illegal conduct at hand, may have personal reasons for giving shaded or otherwise inaccurate information to law enforcement officials, such is not true of bystanders or eyewitness-victims who have no connection with the accused." *United States v. Phillips,* 727 F.2d 392, 397 (5th Cir.1984) (internal quotations and citations omitted).

Indeed, many federal and state jurisdictions have held that tips provided by citizen informants who either (1) have face-to-face contact with the police; or (2) may be identified are generally competent to support a finding of reasonable suspicion (and in some cases, probable cause) whereas the same tip from a truly anonymous source would likely not have supported such a finding. *See, e.g., Pasquarille, supra,* at 687–88 (face-to-face contact with police by an anonymous citizen informant who simply identified himself as "a transporter of prisoners" was sufficient to support a finding of probable cause where informant claimed he had just witnessed an individual attempting to sell drugs at a truck stop); *United States v. Perkins,* 363 F.3d 317, 323 (4th Cir.2004) ("Where the informant is known or where the informant relays information to an officer face-to-face, an officer can judge the credibility of the tipster firsthand and thus confirm whether the tip is sufficiently reliable to support reasonable suspicion."); *United States v. Tucker,* 305 F.3d 1193, 1201 (10th Cir. 2002) (tips from identifiable citizen informants are presumed to be reliable); *Pasiewicz v. Lake County Forest Preserve Dist.,* 270 F.3d 520, 524 (7th Cir.2001) ("When police officers obtain information from an eyewitness or victim establishing the elements of a crime, the information is almost always sufficient to provide probable cause for an arrest in the absence of evidence that the information, or the person providing it, is not credible."); *Frazer v. State,* 80 Ark.App. 231, 94 S.W.3d 357, 361 (2002) (telephone tip by a citizen informant who gave his name was sufficient to support an investigatory stop of a vehicle that the informant suspected was being operated by an intoxicated person); *State v. Larson,* 135 Idaho 99, 15 P.3d 334, 336 (App.2000) ("Where the information comes from a known citizen informant rather than an anonymous tipster, the citizen's disclosure of her identity, which carries the risk of accountability if the allegations turn out to be fabricated, is generally deemed adequate to show veracity and reliability."); *State v. Manuel,* 796 So.2d 602, 605 (Fla.App.2001) ("A tip by a citizen-informant, as opposed to an anonymous tipster, is entitled to a presumption of reliability and does not require further corroboration to provide the requisite reasonable suspicion for a stop.").

Finally, the reliability and veracity of the tip in this case was corroborated by Officer Hastings to the extent that: (1) he was able to verify most of the details given in the tip, including the identity of the tipsters; and (2) he was able to per-

sonally observe the tipsters. When all of these circumstances are considered in their totality, we are unable to conclude that Officer Hastings lacked the requisite reasonable suspicion to justify his stop of Appellee that night.

■ Appellee argues, nonetheless, that this case may be distinguished on the following fact: at the hearing, Officer Hastings admitted that it is police department policy to stop any vehicle or person that is identified through an "attempt to locate" message which is broadcast over the dispatch. Thus, he argues that even if Officer Hastings did not identify and personally observe the actual tipsters in this case, he would have conducted the stop anyway once he was able to verify the identifying information broadcast over the dispatch. Assuming that this is true, it is of no consequence to this decision since the subjective intentions of police officers are irrelevant to judicial determinations of reasonableness. *Wilson v. Commonwealth,* 37 S.W.3d 745, 749 (Ky.2001) (citing *Whren v. United States,* 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996)).

For all of the foregoing reasons, the judgment of the Court of Appeals is reversed; the trial court's order of dismissal is vacated and the case is remanded for proceedings consistent with this opinion.

LAMBERT, C.J., GRAVES, ROACH, SCOTT, and WINTERSHEIMER, JJ. concur.

COOPER, and JOHNSTONE, JJ. concur in result only.