**Tommy KING, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

No. 2009–CA–000413–MR.

Court of Appeals of Kentucky.

April 16, 2010.

Discretionary Review Denied by Supreme Court March 16, 2011.

Stephan Charles, Manchester, KY, for appellant.

Jack Conway, Attorney General, David W. Barr, Assistant Attorney General, Frankfort, KY, for appellee.

Before COMBS, Chief Judge; KELLER and VANMETER, Judges.

## OPINION

KELLER, Judge.

Tommy King (King) entered a conditional guilty plea under *North Carolina v. Alford,* 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970), reserving the right to appeal the trial court's denial of his motion to suppress evidence. After reviewing the record and arguments by the parties, we affirm.

## FACTS

The underlying facts are not in dispute. On August 13, 2007, Detective Dustin Hon (Det. Hon), a Kentucky State Police Officer, received information that King was cultivating marijuana on his property. Based on that information and a request from Det. Hon, two other officers flew over King's property in a helicopter. One of those officers told Det. Hon that he had seen marijuana plants "located within the curtilage in a weedy area off the back left corner of" King's house. Using that information, Det. Hon sought a warrant to search King's house and property. Before Det. Hon could get the warrant, officers went onto King's property and seized a number of marijuana plants growing on King's property. However, officers did not go into or search King's house until after the warrant was issued. Inside the house, officers found marijuana seeds, two bags of marijuana, and various pieces of equipment used to grow plants.

Based on what the search revealed, a grand jury indicted King for the following offenses: (1) cultivating in marijuana (five plants or more); (2) being a persistent felony offender in the second degree; (3) possession of a controlled substance; (4) possession of marijuana; and (5) use/possession of drug paraphernalia. King filed a motion to suppress all of the evidence seized by the officers, arguing that the property searched was part of the curtilage and that the search took place before the warrant was issued.

In its response to King's motion, the Commonwealth argued that the search of the property was lawful because the plants "could have been easily destroyed in the time it took to obtain" the warrant. The Commonwealth also argued that, because the plants were visible from the air, King had no expectation of privacy and officers were not required to obtain a warrant prior to searching the property.

The trial court denied King's motion. In its order, the court stated that none of the officers had entered the premises until the search warrant had been issued. Furthermore, although Det. Hon testified that there was no indication anyone was present, the court found that the possibility someone was on the property and evidence could be destroyed amounted to exigent circumstances sufficient to justify a warrantless search.

King filed a motion for clarification asking the court to clarify whether the attachments[1] to King's motion were "properly before the court" and whether the court's use of the word "premises" included the house or the surrounding curtilage. In its order addressing King's motion, the court stated that by "premises" it meant the house. Furthermore, the court stated that whether the area where the officers found the marijuana was part of the curtilage is an issue for the court. The court noted in its order that "it would perhaps be a good idea for the Court to view the premises to determine whether or not the subject area is within the curtilage ..." and stated that it would "review the premises if the Defendant so requests and then reconsider the matter." We note that, during motion hour following entry of the preceding order, the court and the parties discussed whether the court should view the property. Counsel for King did not object, stating that he thought it would be a good idea for the court to view the property. The parties and the court then agreed to a date and time when that viewing would take place.

Pursuant to that agreement, the court viewed the property, which consists of approximately 180 acres. Based on that view of the property, the court found that King's house sat a significant distance from the road amid wide open fields and forest. The property is fenced and there are no immediate neighbors. The court noted that marijuana was planted near the entrance road to the property, near a barn, and behind the house but on the edge of the forest. The court also noted that, at the time of the search, ragweed grew as high as the entrance to the barn.[2] Having made these observations, the court found that the "absence of neighbors, the marijuana's distance from the home, the height of the ragweed, the proximity of the marijuana to the driveway, and the fact that the fence set off the *entire property* and *not the Defendant's home*" led it to conclude that the marijuana was not within the curtilage but "simply on the ranch and within the enclosure." (emphasis in original).

King moved the court to make additional findings, arguing that there were two fences on the property; one enclosing the entire tract, and one enclosing the area surrounding the house to keep horses from getting into the swimming pool and patio area near the house. At a hearing on King's motion, the judge, King's attorney, and the Commonwealth's attorney discussed at length whether there was an interior fence and, if so, where it was located. The judge and the Commonwealth's attorney stated that they did not remember seeing any interior fence; however, the Commonwealth's attorney stated that he was not looking for a fence. King, who had not been sworn in as a witness, stated that he believed that the interior fence enclosed approximately four acres.[3] There is no indication in the record that the officer had been sworn in as a witness or that he had been subject to cross-examination. Because of the apparent confusion regarding the fences, counsel for King suggested a second viewing. The court declined this invitation, stating that the interior fence, if it encloses a four-acre tract,

---

1. King attached to his motion a number of photographs showing officers removing or destroying marijuana plants outside of the house. The photographs were taken during daylight hours; however, the warrant was not issued until after sunset.

2. It appears that the court obtained this information from an officer who was present while the court was viewing the property.

3. We note that the judge and counsel also discussed what an officer present the day of the viewing said.

would not alter its opinion that the marijuana was outside the curtilage. King then entered a conditional *Alford* plea to cultivation of marijuana, five or more plants, in exchange for the Commonwealth's recommendation of a sentence of two-years' imprisonment.

King appeals the trial court's denial of his motion to suppress. On appeal, King argues that the marijuana plants were found within the curtilage, making the warrantless search and seizure unlawful. King also argues that, by viewing the real property, without having been moved to do so, the court overstepped its bounds and assumed the role of prosecutor.

## STANDARD OF REVIEW

The standard of review on a suppression motion is two-fold. First, the factual findings are conclusive if supported by substantial evidence and should only be reviewed for clear error. RCr 9.78; *Commonwealth v. Neal*, 84 S.W.3d 920, 923 (Ky.App.2002). Second, when the findings of fact are supported by substantial evidence, the question is "whether the rule of law as applied to the established facts is or is not violated." Such mixed questions of law and fact are subject to *de novo* review. *Adcock v. Commonwealth*, 967 S.W.2d 6, 8 (Ky.1998), (*quoting Ornelas v. United States*, 517 U.S. 690, 697, 116 S.Ct. 1657, 1662, 134 L.Ed.2d 911 (1996)). In reviewing an order regarding a motion to suppress, the appellate court is bound to give "due weight to inferences drawn from [the] facts by resident judges and local law enforcement officers." *Ornelas*, 517 U.S. at 699, 116 S.Ct. at 1663. With these standards in mind, we review the issues raised by King.

## ANALYSIS

King first argues that the trial court erred by denying his motion to suppress.

That argument appears to be two-fold: (1) that no exigent circumstances existed which would have justified a warrantless search and seizure; and (2) that the marijuana plants on the real property were within the curtilage and should not have been seized before issuance of the search warrant. We address these arguments below in that order.

King correctly points out that the trial court, in its July 3, 2008, order denying his motion to suppress, referred to exigent circumstances as excusing the need for a search warrant. However, as noted above, King filed a motion for clarification of that order. The court treated this motion as a "Motion to Reconsider" and entered a final order on December 16, 2008. In that final order, the court adopted its previous findings regarding the validity of the flyover and the search of the house. The court then stated that the marijuana plants seized from the real property were outside the curtilage, which made a warrantless seizure lawful. The court's final order, which gave rise to this appeal, did not rely on exigent circumstances as the reason for denying King's motion to suppress. Instead, it relied on the extent of the curtilage. Therefore, we need not address the exigent circumstances issue argued by King.

As to the curtilage issue, we note that it is a long-standing precept that, absent certain exceptions, a house and surrounding curtilage are protected by the Fourth Amendment's proscription against warrantless searches and seizures. *See United States v. Dunn*, 480 U.S. 294, 300, 107 S.Ct. 1134, 1139, 94 L.Ed.2d 326 (1987). That protection does not extend to open fields. *Oliver v. United States*, 466 U.S. 170, 176, 104 S.Ct. 1735, 1740, 80 L.Ed.2d 214 (1984). To determine if real property falls within the curtilage, a trial court is required to consider four factors:

proximity to the house, whether the area is enclosed with the house, how the area is being used, and what the resident has done to secure his privacy. If the area is determined to be within the protected curtilage, then the officer is not in a place where he has a right to be, and any evidence thus illegally seized must be suppressed.

*Quintana v. Commonwealth,* 276 S.W.3d 753, 760 (Ky.2008). The court should not mechanically apply these factors but rather use them as analytical tools to determine "whether the area in question is so intimately tied to the home itself that it should be placed under the home's 'umbrella' of Fourth Amendment protection." *Dunn,* 480 U.S. at 301, 107 S.Ct. at 1140.

■ The trial judge herein went to King's property and viewed where the house was situated relative to where the marijuana plants were discovered. After doing so, the court found that the areas where officers seized the plants were outside the curtilage. In making this finding, the court noted the four *Quintana* factors and applied those factors to what it observed. Accepting the court's findings of fact, which we must do, we cannot say that its conclusion that the marijuana plants were outside the curtilage is clear error. In so holding, we note that, accepting King's argument that there were two fences surrounding the house, the closest fence enclosed nearly four acres. Furthermore, the court stated that it had not observed an interior fence, indicating that, if present, its presence was not obvious. Although the court stated that some plants were found within a short distance of the house, it noted that those plants were at the edge of the forest on a fence line. Finally, the court noted that a number of plants were found in a patch of ragweed that was as tall as a barn door. These findings by the court establish that the

plants were not found in a "setting for those intimate activities that the [Fourth] Amendment is intended to shelter from government interference or surveillance." *Oliver,* 466 U.S. at 179, 104 S.Ct. at 1741. Therefore, we discern no error in the court's determination that the marijuana plants were found outside the curtilage and that their seizure was lawful.

King next argues that the trial court abused its discretion and acted as prosecutor when it undertook to view his property. In his brief King states that, in response to his motion to suppress, the only argument made by the Commonwealth was that exigent circumstances justified the officers' seizure of the plants prior to issuance of the warrant. He asserts that the court, rather than ruling on the issue as presented, took up the issue of curtilage on its own. This somewhat misstates what occurred. The court did initially find that the seizure of the plants was lawful because officers did not enter the premises until after the warrant was issued and because of exigent circumstances. Furthermore, King is correct that Det. Hon, not he, stated the plants were within the curtilage. However, in his motion for clarification, King asked the court to state whether "premises" included only the house or the house and curtilage. King's argument depended on a finding that the plants were found within the curtilage and the court had to address that issue. Whether the statement that the plants were within the curtilage originated with King or Det. Hon is irrelevant. Therefore, we discern no error in the court's decision to address that issue.

As to the court's decision to view the property, King is correct that the court indicated in its September 11, 2008, order that it would view the property if asked to do so by King. Furthermore, King is cor-

rect that he did not directly ask the court to do so. However, King's counsel did not object, and he stated that he thought it would be a good idea for the court to view the property. Therefore, King's assertion that the trial court was acting as a prosecutor by addressing the issue of curtilage and viewing the property is not persuasive.

■ Finally, we note King's argument that the court did not make a record of the viewing. We are somewhat concerned about this because of the post-viewing confusion regarding the presence or absence of an interior fence. Furthermore, we are concerned about statements which were made during the viewing that were not made part of the record by way of sworn testimony. However, matters not raised before the trial court may not be raised for the first time on appeal. *See Kaplon v. Chase,* 690 S.W.2d 761, 763 (Ky.App.1985). Therefore, we must set those concerns aside in this matter because King did not ask the court to make a record of the viewing or for a hearing regarding what was said during the viewing.

### CONCLUSION

For the reasons set forth above, we affirm the trial court.

ALL CONCUR.