RENDERED: DECEMBER 2, 2022; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2020-CA-1525-MR

LEWACO LEYULTEE CLAY                                    APPELLANT

APPEAL FROM FAYETTE CIRCUIT COURT
v.         HONORABLE KIMBERLY N. BUNNELL, JUDGE
ACTION NO. 20-CR-00519

COMMONWEALTH OF KENTUCKY                                APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  JONES, LAMBERT, AND K. THOMPSON, JUDGES.

JONES, JUDGE:  Lewaco Leyultee Clay appeals the final judgment of the Fayette

Circuit Court following the court's denial of his motion to suppress incriminating

evidence seized during an investigatory stop.  Clay entered a conditional guilty

plea to an amended charge of convicted felon in possession of a firearm and a

charge of first-degree possession of a controlled substance predicated on the

evidence seized. For the reasons stated herein, we affirm the trial court's denial of the suppression motion and the subsequent judgment.

## I. BACKGROUND

Lexington Police Sergeant Joshua Yar conducted surveillance of an apartment building located at 734 North Broadway in Lexington, Kentucky where he observed multiple individuals coming and going. Based on prior department investigations and his own observations, he suspected that drug activity was occurring on the premises. On April 27, 2020, Sergeant Yar spoke with the lessor of the property, Rick Reynolds, who indicated he received complaints from tenants regarding excessive foot traffic from non-tenants on the property. Reynolds also indicated a tenant who resided in apartment unit three reported he was forced out by a reported drug dealer going by the name "Capone." Reynolds requested assistance from Sergeant Yar in removing trespassers from the property and provided him a "rent roll" listing the names of each of the apartment's tenants along with a text message containing a photograph of the individual believed to be "Capone."

That same day, Sergeant Yar shared the information and photograph from Reynolds with Officer Joseph Schiff, and they, along with other Lexington police officers, investigated the property at 734 North Broadway. Soon after arriving, Officer Schiff, who was wearing a body camera, approached Clay who

was standing outside apartment three. Officer Schiff tried to question Clay outside the apartment, but Clay was not receptive. He turned his back on Officer Schiff and proceeded to enter apartment three, leaving the door open behind him. While Clay was entering the apartment, Officer Schiff, implored: "Hold up, man. Hey, I'm talking to you. I'm talking to you. Get back here." Officer Schiff then walked forward within view of the inside of the apartment's open threshold, where he could see Clay and the individual known as "Capone" inside.

Officer Schiff instructed both men to exit the apartment. "Capone," who identified himself as Antonio Winn, was placed in handcuffs. Clay was told to sit down outside of apartment three; he was later moved to the front of the apartment building where he was also placed in handcuffs. After Clay noticed a female acquaintance, he asked Officer Schiff to give his backpack to her. When Officer Schiff asked if it contained anything that would "stick" or "poke" him, Clay told him to "dump" its contents. Officer Schiff emptied the contents of the backpack and discovered a plastic bag containing crack cocaine. Clay was placed under arrest, and a further search of the backpack's contents uncovered a scale with residue, a loaded handgun, and over $200 in cash.

On June 29, 2020, Clay was indicted for being a convicted felon in possession of a handgun, first-degree possession of a controlled substance, third-degree criminal trespassing, and being a second-degree persistent felony offender.

Clay filed a motion to suppress the evidence seized from his backpack. At the evidentiary hearing, Sergeant Yar and Officer Schiff testified, and excerpts of police body camera video were played. The trial court denied the motion with oral findings and entered a written order on September 18, 2020. Clay entered a conditional guilty plea, preserving his right to appeal the denial of his motion to suppress. This appeal followed.

## II. STANDARD OF REVIEW

A review of a decision on a suppression motion is a twofold analysis. First, the factual findings of the lower court are conclusive if based on substantial evidence and subject to reversal based upon clear error. *King v. Commonwealth*, 332 S.W.3d 97, 100 (Ky. App. 2010). Second, the lower court's application of the law as to its findings of fact are reviewed under a *de novo* standard. *Id.* We review the issues raised in this appeal under this standard.

## III. ANALYSIS

Clay argues that police unlawfully detained him based on information that amounted to an uncorroborated anonymous tip when the detention was initiated, and as a direct result, any subsequent consent to search his belongings was tainted. In making our analysis, we first examine the nature of the tip obtained by police before reviewing the direct circumstances of Clay's detention on scene.

Clay argues that his detention was based on information that amounted to an uncorroborated anonymous tip because the original source, the tenant of apartment three, was not on the premises at the time of the investigation and never spoke with law enforcement directly. The nature of whether a tip or report originates from a known or anonymous source determines its "presumption of reliability." *Commonwealth v. Kelly*, 180 S.W.3d 474, 477 (Ky. 2005) (citation omitted). Identifiable sources are entitled to a greater "presumption of reliability" as opposed to an unknown "anonymous" source. *Id.* Factors such as "veracity, reliability[,] and basis of knowledge are all highly relevant in determining the value of [a] report." *Id.* (internal quotation marks omitted) (quoting *Illinois v. Gates*, 462 U.S. 213, 230, 103 S. Ct. 2317, 2328, 76 L. Ed. 2d 527 (1983)). Another relevant factor includes the possibility for an informant to face accountability in the event the information proves to be inaccurate. *Id.* (citing *Florida v. J.L.*, 529 U.S. 266, 120 S. Ct. 1375, 146 L. Ed. 2d 254 (2000)).

We do not agree with the characterization that the information relayed to the police in this matter amounted to an anonymous tip. The tip's original source was readily identifiable to police because he was directly known to Reynolds by name, and he was specifically identified to Sergeant Yar who relayed the information to Officer Schiff. *See Kelly*, 180 S.W.3d at 477 (holding a call made from unnamed employees of a specifically identified Waffle House "raise[d]

a strong presumption that [they] could likely be located in the event that their tip was determined to be false[.]"). Thus, due to the original source's specifically known identity, he was more akin to a citizen informant. *See Hampton v. Commonwealth*, 231 S.W.3d 740, 745 (Ky. 2007) (emphasis added) ("Citizen informants are tipsters who have face-to-face contact with the police or *whose identity may be readily ascertained*."). Additionally, in this case, law enforcements own observations of excessive foot traffic at the apartment building were consistent with the tenants concerns about drug activity.

Clay argues that the tenant of apartment three was never directly contacted by investigators during or after their arrival at the scene. While Officer Schiff testified attempts were made, this ultimately has no bearing on the justification for the initiation of Clay's detention as the officer's judgment is evaluated based on his knowledge at the time the detention began. *See J.L.*, 529 U.S. at 271, 120 S. Ct. at 1379 ("The reasonableness of official suspicion must be measured by what the officers knew before they conducted their search.").

The source's basis of knowledge was also readily apparent as he was the rightful possessor and previous occupant of the apartment in which criminal activity was allegedly occurring. The information's reliability was bolstered by Reynolds who affirmed and corroborated the tenant's leasehold of the unit with written documentation in the form of the "rent roll." The original source of the

information was therefore afforded the "presumption of reliability" as it was provided by a known informant. Having established the tip's presumptive reliability, we now turn to the facts of Clay's detention.

It is long settled under *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968), that police officers may initiate a detention if supported by reasonable articulable suspicion of criminal activity. Reviewing the reasonableness of what have been named "*Terry* stops" is a dual analysis where it must be determined if the officer's stop was "justified at its inception" and if the scope of it was reasonable in relation to the circumstances "which justified the interference in the first place." *Id.* at 19-20, 88 S. Ct. at 1879. The facts and circumstances providing the basis for the stop must be examined in their totality when determining if it was based on reasonable suspicion. *Kelly*, 180 S.W.3d at 477 (citing *Alabama v. White*, 496 U.S. 325, 330, 110 S. Ct. 2412, 2416, 110 L. Ed. 2d 301 (1990)). A reviewing court should not consider each factor relied upon by police in isolation and should give due regard to their inferences and deductions reached based upon their experience and training. *Baltimore v. Commonwealth*, 119 S.W.3d 532, 539 (Ky. App. 2003) (citation omitted).

Clay argues his detention began the instant Officer Schiff told him to "hold up" during his entry into apartment three while the trial court and the Commonwealth reference the moment in which he was instructed to "sit down"

after exiting.  For purposes of this decision, it is not dispositive as to exactly when Clay's detention began because the police possessed the requisite basis to initiate a stop in both instances.

When Officer Schiff first approached Clay, he was seen at a location suspected of recurring drug activity.  *See Illinois v. Wardlow*, 528 U.S. 119, 124, 120 S. Ct. 673, 676, 145 L. Ed. 2d 570 (2000) ("[W]e have previously noted the fact that [a] stop occurred in a 'high crime area' among the relevant contextual considerations in a *Terry* analysis."); *Fletcher v. Commonwealth*, 182 S.W.3d 556 (Ky. App. 2005) (subject was detained after he was surveilled for ten minutes at a house suspected of drug activity in a high crime neighborhood).  Additionally, Clay was observed occupying an area in which there were reports of trespassing directly outside an apartment unit reportedly occupied on an unlawful basis by an armed drug dealer.  *See Gray v. Commonwealth*, 150 S.W.3d 71, 74 (Ky. App. 2004) ("Trespassing and loitering, being minor criminal activity, alone provide sufficient reasonable suspicion for an officer to stop and question a subject.").

Officer Schiff testified that soon after contact was initiated Clay stated that he lived at apartment three.  Immediately thereafter, based on the body camera footage, Clay gave a contradictory answer indicating he was there to see Winn

whom he specifically referred to as "Capone."[1] *See Williams v. Commonwealth*, 364 S.W.3d 65, 70 (Ky. 2011) (citation omitted) (association "with a person who is independently engaged in criminal activity" is a factor that "can be considered in determining . . . whether reasonable, articulable suspicion exists for a *Terry* stop."). Clay's specific mention of "Capone," coupled with the "rent roll" not listing either subject as tenants, provided independent corroboration of Reynold's tip. Clay then proceeded to enter the apartment in a manner the trial court found to be "a little evasive." *See Wardlow*, 528 U.S. at 124, 120 S. Ct. at 676 ("[N]ervous, evasive behavior is a pertinent factor in determining reasonable suspicion."); *see also Commonwealth v. Banks*, 68 S.W.3d 347, 350 (Ky. 2001). Alternatively, if the detention began after Clay exited apartment three and was told to "sit down," an articulable suspicion was still established based on the immediately preceding reasons discussed as well as Officer Schiff's observation of "Capone" inside the apartment which provided further corroboration of Reynold's tip.

Clay argues that his presence at the scene, refusal to listen to Officer Schiff, and association with a subject engaged in criminal activity would not each provide sufficient cause to detain him. However, this argument fails because it

---

[1] Police body camera footage of this moment was played into the record at the hearing, but it is difficult to discern what is exactly being said from a review of the video record. The original footage itself was not submitted into the record as an exhibit, and the trial court's finding is not clearly erroneous based on what can be discerned.

neglects to consider the factors in their totality. *See Baltimore*, 119 S.W.3d at 539. When weighed cumulatively, all these factors establish an articulable suspicion of criminal activity that would justify a *Terry* stop of Clay, namely, that he was potentially engaging in criminal trespassing with the purpose of participating in drug activity.

Clay cites to the unpublished decision in *Commonwealth v. Stephens*, No. 2006-SC-000305-DG, 2008 WL 2167980 (Ky. May 22, 2008), for support. In *Stephens*, during nighttime surveillance of an apartment building known for drug trafficking, a Lexington police officer approached a female subject, Brandy Stephens, who he observed walking on the premises with a nervous demeanor. After the officer asked Stephens for her identifying information, he noticed a three-year discrepancy between her provided age and date of birth. When a records search of the provided information yielded no criminal record, the officer warned of the criminal nature of providing a false name, but she maintained the information she provided was accurate. The officer continued his questioning and performed a second records check of a Florida database after she indicated she possessed a Florida driver's license. *Id.* at *1-2. The Kentucky Supreme Court deemed the officer's initial approach to have been a consensual encounter up to the moments after the first conclusion of his records check. While noting it to be a "close call," the Court ultimately declared an impermissible stop occurred when he

continued her questioning after he warned her about the penalties of giving a false name and she maintained the accuracy of the information. The Court reasoned that the officer needed an articulable suspicion at that moment, and without other factors such as evasive behavior, a nervous subject's presence in a high crime area was not sufficient cause upon which to initiate a detention. *Id.* at *4-6.

We disagree that the facts in *Stephens* are sufficiently analogous because, as previously discussed, there were additional articulable factors to justify Clay's stop beyond his presence in a high crime area. Contrary to his argument, Clay's entry into apartment three did not satisfy suspicions concerning his legitimate presence at the scene because there was reasonable cause to believe the occupant allowing him to make entry did not possess lawful consent to do so.

Instead, we perceive the circumstances discussed in *Commonwealth v. Fields*, 194 S.W.3d 255 (Ky. 2006), as more applicable. In *Fields*, Lexington police approached a subject observed in the parking lot of an apartment complex with clearly posted signs forbidding trespassing and loitering while they were searching the neighborhood for a suspected drug dealer. After being observed turning away from the officers' vehicle three times, police pulled up and called over to him twice before he ultimately approached them. He was questioned as to his purpose on the premises, and he answered that he was visiting "his people" but was unable to provide specific names and addresses of any residents thereby

-11-

resulting in his arrest for criminal trespassing. *Id.* at 255-56. Like the suspect in *Fields*, Clay was observed behaving evasively in an area where officers reasonably suspected he did not have a lawful right to be, and he could not provide a clear answer establishing a legitimate purpose for being there.

Finally, Clay argues that any consent to search his bag was tainted due to the asserted groundlessness to detain him. Having established there was sufficient grounds, the consent to search his bag was not tainted as a result.

## IV. CONCLUSION

For the foregoing reasons, we affirm the judgment of the Fayette Circuit Court.

LAMBERT, JUDGE, CONCURS.

THOMPSON, K., JUDGE, CONCURS IN RESULT ONLY.

BRIEFS FOR APPELLANT:

Jared Travis Bewley
Frankfort, Kentucky

BRIEF FOR APPELLEE:

Daniel Cameron
Attorney General of Kentucky

Courtney J. Hightower
Assistant Attorney General
Frankfort, Kentucky