RENDERED:  JUNE 9, 2023; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2022-CA-0989-MR

DAVID VINCENT                                                    APPELLANT


                 APPEAL FROM METCALFE CIRCUIT COURT
v.                  HONORABLE JOHN T. ALEXANDER, JUDGE
                       ACTION NO. 17-CR-00051


COMMONWEALTH OF KENTUCKY                           APPELLEE


<u>OPINION</u>
<u>AFFIRMING</u>

** ** ** ** **

BEFORE:  COMBS, EASTON, AND ECKERLE, JUDGES.

ECKERLE, JUDGE:  David Anthony Vincent ("Vincent") appeals the denial of his motion to suppress evidence resulting from a warrantless search and seizure. Because we hold that the initial seizure was supported by at least a reasonable, articulable suspicion of criminal activity, and the subsequent search was lawful

under the automobile exception to the warrant requirement, we affirm the Trial Court's order denying the motion.

## BACKGROUND

This case involves a traffic stop and a subsequent vehicular search resulting in the discovery of substantial quantities of drugs. It began on June 18, 2017, with a phone call to Officer David Robertson, who was on patrol with the Edmonton Police Department. The call emanated from a person ("Informant") whom Officer Robertson knew by name and with whom he had previously interacted while attending to Informant's domestic issues. Informant was acquainted with drug use as her husband used methamphetamine and, unrelated to this case, perished by suicide after the instant events occurred.

On the date in question, Informant called Officer Robertson directly and stated that there were two people "acting strangely and odd" inside the local Five Star store. Informant believed the male was acting "nervous" and "fidgety" inside the store, and Informant "thought he was on something." Informant told Officer Robertson that when the couple went outside, the female "climbed up on the bumper" and was jumping up and down. "Maybe they were on something" or they were "maybe high," Informant told Officer Robertson. Informant did not state that she personally knew either the male or the female. Informant told Officer Robertson that the couple was getting into a big car at the end of the pumps.

Officer Robertson arrived soon thereafter and stopped in the parking lot of the Chinese restaurant across the street from the Five Star. He did not see anyone outside of a vehicle, but he did notice what appeared to be two people in a car at the end of the pumps. He noticed some of the front-facing lights were red, which he had heard violated a newly passed law.[1] As he would later discover, it was not *at that time* unlawful to have such lights; instead, a new law prohibiting such lights in certain circumstances had in fact been passed, but did not go into effect for another 11 days. When the car exited the station, he followed it for approximately one quarter mile. He did not observe any erratic driving or suspicious behavior. Officer Robertson then pulled the car over for the supposed traffic violation, intending on giving the occupants a warning for the red lights.

Following the stop, Officer Robertson asked for identification and discovered Vincent's license was suspended. His female passenger, Erica Johnson ("Johnson"), had an active warrant in Indiana. Officer Robertson arrested Vincent and Johnson and asked if there was anything illegal in the car. Johnson indicated that in her purse she had needles from a needle exchange in Jefferson County, and

---

[1] Vincent argues in his Reply Brief that Officer Robertson did not believe the law was already in effect because he testified that he had been told of the new law, but not what date it went into effect. Reply Brief at 1. We do not agree with this nuanced distinction, but even if we did, this interpretation would not be ultimately dispositive of the issues. Officer Robertson testified that he effected the stop because of the color of the lights, which he believed violated the new law. The Trial Court's Order denying the motion found that Officer Robertson "premised the stop in part on the color of the vehicle's parking lights." The Trial Court's factual finding is supported by substantial evidence and not clearly erroneous.

Vincent stated that there were one and a half pills of Lortab under or beside the driver's seat. Having secured Vincent and Johnson in cruisers, Officer Robertson proceeded to search the vehicle for the Lortab.

While in the vehicle, Officer Robertson smelled marijuana coming from the vehicle's console. After searching the console, Officer Robertson found a pipe with marijuana. He also found a small baggie of a white crystalline substance under the driver's seat. Officer Robertson then searched the remainder of the vehicle and found a baseball-sized bag of more than 55 grams of methamphetamine in the trunk. Officer Robertson stated that Vincent admitted the bag in the trunk was his.

Officer Robertson did not charge Vincent with driving under the influence. Vincent was later indicted for: one count of trafficking in a controlled substance, first degree (methamphetamine), more than two grams, first offense (KRS[2] 218A.1412); one count of drug paraphernalia – buy/possess (KRS 218A.500(2)); one count of prescription controlled substance not in a proper container, first offense (KRS 218A.210); one count of possession of marijuana (KRS 218A.1422); one count of operating on a suspended or revoked operator's license (KRS 186.620); and one count of improper equipment (KRS 189.020).

---

[2] Kentucky Revised Statutes.

Vincent moved to suppress the evidence Officer Robertson found during his search of the vehicle as fruits of an illegal search and seizure. Following an evidentiary hearing at which Officer Robertson was the only witness, the Trial Court denied the motion to suppress, making alternative conclusions that Officer Robertson's mistake of law regarding the red lights on the car was reasonable and justified the traffic stop, or the information received from Informant constituted a reasonable, articulable suspicion justifying an investigatory stop. The Trial Court also found the vehicular search was lawful pursuant to the "automobile exception" to the warrant requirement.

Vincent then entered a conditional plea to the first five charges, with the sixth being dismissed, and received an agreed, total, five-year sentence of imprisonment. Vincent was finally sentenced accordingly on July 15, 2022. He now appeals the denial of his motion to suppress. The Trial Court's order is discussed in more detail below.

## ANALYSIS

A warrantless stop for a suspected violation of a traffic law may implicate the prohibitions against unreasonable searches and seizures under the Fourth Amendment to the United States Constitution and Section 10 of the Kentucky Constitution. *Heien v. North Carolina*, 574 U.S. 54, 60, 135 S. Ct. 530, 536, 190 L. Ed. 2d 475 (2014) (citing *Brendlin v. California*, 551 U.S. 249, 255-

59, 127 S. Ct. 2400, 2405-08, 168 L. Ed. 2d 132 (2007)); *Commonwealth v. Bucalo*, 422 S.W.3d 253, 257 (Ky. 2013). Indeed, all traffic stops, even those with limited purposes and brief detentions, are considered seizures of the driver. *Delaware v. Prouse*, 440 U.S. 648, 653, 99 S. Ct. 1391, 59 L. Ed. 2d 660 (1979). The touchstone of the search and seizure analysis is reasonableness from an objective standard, as the subjective motivations of the officer in effectuating a stop for a traffic violation are not relevant. *Wilson v. Commonwealth*, 37 S.W.3d 745, 749 (Ky. 2001) (citing *United States v. Akram*, 165 F.3d 452, 455 (6th Cir. 1999), and *Whren v. United States*, 517 U.S. 806, 116 S. Ct. 1769, 135 L. Ed. 2d 89 (1996)). When the stop is for a traffic violation, the seizure is reasonable if the officer "'has probable cause to believe that a traffic violation has occurred.'" *Davis v. Commonwealth*, 484 S.W.3d 288, 291 (Ky. 2016) (quoting *Bucalo*, 422 S.W.3d at 258). Such probable cause arises when an officer witnesses a person commit a traffic violation. *Bucalo*, 422 S.W.3d at 258.

Additionally, for investigatory purposes, when an officer stops a person or detains him beyond the time necessary to accomplish the purpose for a traffic stop, that seizure is reasonable if the officer's observations lead to a reasonable suspicion that a person has committed, is committing, or is about to commit a crime. *Bucalo*, 422 S.W.3d at 259 (citing *Berkemer v. McCarty*, 468 U.S. 420, 439, 104 S. Ct. 3138, 3150, 82 L. Ed. 2d 317 (1984); and *Terry v. Ohio*,

392 U.S. 1, 29, 88 S. Ct. 1868, 1884, 20 L. Ed. 2d 889 (1968)). The reasonable

suspicion analysis is a lesser standard than probable cause and requires only "'a

particularized and objective basis for suspecting the particular person stopped' of

breaking the law." *Heien*, 574 U.S. at 60, 135 S. Ct. at 536 (quoting *Navarette v.

California*, 572 U.S. 393, 396, 134 S. Ct. 1683, 1687-88, 188 L. Ed. 2d 680

(2014)).

Appellate review of a motion to suppress involves a two-step analysis:

first, we review the Trial Court's factual findings under the clear error standard,

where findings are conclusive if they are supported by substantial evidence; and,

second, we conduct a *de novo* review the application of the law to the facts.

*Simpson v. Commonwealth*, 474 S.W.3d 544, 547 (Ky. 2015).

Here, the Trial Court's factual findings are interwoven with its legal

conclusions rather than stated separately. Regarding the facts underlying the initial

seizure, Vincent does not claim the Trial Court's Order contains any erroneous

factual findings. We have reviewed the Order in total and find that the factual

findings align with those presented above in our summary. Thus, the factual

findings are conclusive for our review, and we proceed to a *de novo* review of the

two justifications for the seizure.

## I. The mistake of law was objectively reasonable and supported the traffic stop.

The Trial Court first concluded under the probable cause analysis that the traffic stop was not unreasonable because it was based on an objectively reasonable mistake of law. There is no disagreement that Officer Robertson witnessed the front of the car and saw red lights. Furthermore, it is without reasonable dispute that Officer Robertson made a mistake of law when effectuating the traffic stop, as the traffic law requiring white or amber front-facing lights was just shy of becoming effective. Indeed, the 2017 Kentucky General Assembly amended KRS 189.040 with House Bill 74, adding subsection 14, which prohibits, in certain circumstances, front-facing vehicular lights that are not white or amber in color. The Governor signed the Bill on March 21, 2017. The General Assembly then adjourned *sine die* on March 30, 2017. As House Bill 74 was not an emergency bill, it became effective 90 days after the adjournment of the session in which it was passed. KY. CONST. § 55. *See also Virgil v. Commonwealth*, 403 S.W.3d 577, 579-80 (Ky. App. 2013). Thus, the effective date of this legislation was June 29, 2017, which was 11 days after Vincent was stopped by Officer Robertson. Accordingly, Officer Robertson effectuated a traffic stop for a law not quite yet in effect. *See generally Buck v. Commonwealth*, 308 S.W.3d 661, 664-65 (Ky. 2010) (discussing that punitive, retrospective laws constitute *ex post facto* laws that violate the United States and Kentucky Constitutions).

The Trial Court agreed that Officer Robertson so erred, but nonetheless held that the error was an objectively reasonable mistake of law pursuant to *Heien*, 574 U.S. 54, 135 S. Ct. 530, and, as such, was not an unreasonable seizure. Having reviewed the issue *de novo*, we agree.

In *Heien*, an officer effectuated a traffic stop when he noticed only one brake light worked on the car he was following. The North Carolina law regarding brake lights was ambiguous regarding whether one functioning light was sufficient because the law referred to "a stop lamp" and "a unit with one or more other rear lamps." The North Carolina Court of Appeals later interpreted the law as requiring only one functioning rear brake light, thus finding that the officer did not have probable cause or reasonable suspicion to stop the vehicle. However, the United States Supreme Court later determined that there was no Fourth Amendment violation because the officer's interpretation of the ambiguous law was an objectively reasonable mistake. 574 U.S. at 57-64, 135 S. Ct. at 534-38.

The Court framed the analysis as determining "whether it was reasonable for an officer to suspect that the defendant's conduct was illegal." *Id.* at 66, 135 S. Ct. at 539. "If so, there was no violation of the Fourth Amendment in the first place." *Id.*

The reality is that officers often "suddenly confront" situations where a statute's application is ambiguous or unclear. *Id.* For example, if a law prohibits

"vehicles" in public parks, should an officer cite a Segway? *Id.* The Court held that reasonable mistakes of law do not implicate the Fourth Amendment, but it nonetheless cautioned that such mistakes must be objectively reasonable. "[O]ur decision does not discourage officers from learning the law. The Fourth Amendment tolerates only *reasonable* mistakes, and those mistakes – whether of fact or of law – must be *objectively* reasonable." *Id.* (emphasis in original). The Court cautioned that "an officer can gain no Fourth Amendment advantage through a sloppy study of the laws he is duty-bound to enforce." *Id.* at 67, 135 S. Ct. at 539-40.

The instant case falls under *Heien* as it presents both an ambiguous or unclear statute and an objectively reasonable mistake of law.[3] First, the officer here was laboring under a sudden confrontation involving application of a statute that had an unclear effective date. Determining when newly enacted legislation becomes effective is a complex calculus. The Kentucky Constitution provides that acts of the General Assembly become effective 90 days after the adjournment of the session in which it was passed, unless the act is declared an emergency with the reasons announced therefore. KY. CONST. § 55; *Virgil*, *supra*. As our General Assembly meets for regular session once per year, the effective dates change

---

[3] To the extent our Courts have not formally adopted the holding of *Heien*, we do so now "to bring the jurisprudence of this Commonwealth into compliance with that of our nation's highest court." *Rose v. Commonwealth*, 322 S.W.3d 76, 79 (Ky. 2010).

annually depending on when the General Assembly ultimately adjourns *sine die*. In fact, a review of the ten years preceding 2017 shows that the General Assembly adjourned *sine die* from its regular sessions on: April 15, 2008; March 26, 2009; April 15, 2010; March 9, 2011; April 12, 2012; March 26, 2013; April 15, 2014; March 25, 2015; April 15, 2016.

Notably, in those ten years, the effective dates for newly-enacted, non-emergency legislation were between early June and mid-July. An objectively reasonable person viewing this pattern would then expect a new law passed in the same year to be in effect sometime between early June and mid-July. And, "[a]s the [Fourth Amendment] makes clear, 'the ultimate touchstone of the Fourth Amendment is "reasonableness."'" *Riley v. California*, 573 U.S. 373, 381, 134 S. Ct. 2473, 2482, 189 L. Ed. 2d 430 (2014) (quoting *Brigham City v. Stuart*, 547 U.S. 398, 403, 126 S. Ct. 1943, 1947, 164 L. Ed. 2d 650 (2006)).

Additionally, our conclusion that the effective date is ambiguous or unclear is supported by our Commonwealth's recent attempt to amend our Constitution to repeal Section 55 and ostensibly create a date-specific, July 1, for the effective date of non-emergency legislation. *See* 2021 Kentucky General Assembly, House Bill 4. That amendment, which was packaged with other proposed changes, was narrowly defeated in the 2022 General Election. Thus, Section 55 and its complex effective-date computation remain.

Having found the effective date ambiguous or unclear, we also hold that Officer Robertson's mistaken belief that the law was in effect was objectively reasonable. As noted above, it would be objectively reasonable to believe that the legislation was effective sometime beginning in mid-June of any given year. Had Officer Robertson attempted a traffic stop in April or May, our conclusion might be different. Likewise, had Officer Robertson been informed that the law was not yet effective, our conclusion would be different. However, his study of the law here was that he received information at his precinct about a new traffic law the General Assembly had passed, and he sought to enforce it around the time that one would expect newly enacted legislation would likely be effective. He erred by 11 days. Under these circumstances, his mistake of law was not objectively unreasonable.

Indeed, our survey of other jurisdictions shows that an unreasonable mistake of law requires much more than simply missing an effective date – a date that changes every year. For example, in *Florida v. Rand*, 209 So.3d 660, 667 (Fla. Dist. Ct. App. 2017), it was an unreasonable mistake of law for an officer to seize a person for trespass at a school track when the school left the gate open at night, told school officers that the track was open for use by the public, and posted conspicuous signs inviting the public to use the school track. Likewise, in *United States v. Alvarado-Zarza*, 782 F.3d 246, 249-50 (5th Cir. 2015), a mistake of law

was unreasonable where the "statute facially [gave] no support" to the officer's interpretation, and longstanding case law also disagreed. In contrast, Officer Robertson correctly surmised that the red lights were unlawful based on the new legislation, but he made an objectively reasonable mistake of law regarding the date when the law became effective and missed it by a little over one week.

In summary, the mistake of law must be objectively reasonable and based on more than a "sloppy study" of an ambiguous law. *Heien, supra*. Here, the Kentucky Constitution provides for an annual, moving target of when newly enacted legislation is effective, and Officer Robertson's study of the law was thorough enough to identify that the red lights were unlawful; he simply erred by missing the effective date by 11 days. Accordingly, the initial seizure was reasonable and did not violate Vincent's constitutional rights under the United States or Kentucky Constitutions.

## II. We need not determine whether there was reasonable, articulable suspicion justifying the initial stop.

The Trial Court alternatively concluded that the stop was reasonable as an investigatory stop, which requires a reasonable, articulable suspicion that criminal activity has occurred, is occurring, or is about to occur. Having decided that the mistake of law was reasonable, we need not decide whether, additionally, there was also reasonable, articulable suspicion to support the investigatory stop. Nonetheless, here the Trial Court found the facts of this case to be substantially

similar to *Commonwealth v. Kelly*, 180 S.W.3d 474 (Ky. 2005), where our highest Court determined that a non-anonymous tip that a Waffle House patron was intoxicated, coupled with an officer's subsequent, corroborating investigation, was sufficient to constitute reasonable, articulable suspicion justifying an investigatory stop.

While we need not determine whether Informant's tip and Officer Robertson's investigation constituted reasonable, articulable suspicion here, we note two other cases with similar facts likewise upheld investigatory searches such as this one. *Reynolds v. Commonwealth*, 393 S.W.3d 607 (Ky. App. 2012); *Nichols v. Commonwealth*, 186 S.W.3d 761 (Ky. App. 2005). However, because the initial seizure was justified based on the mistake of law, we move to the search.

III.   **The automobile search was lawful pursuant to the automobile exception to the warrant requirement**.

Having found that the initial seizure was lawful, we must next determine whether the vehicular search was also lawful. The Trial Court noted that following the stop, Vincent was arrested for operating on a suspended license, after which Officer Robertson conducted a search of the vehicle. The Trial Court concluded that this search was permissible either as a search incident to arrest or pursuant to the automobile exception to the warrant requirement. We disagree with the former, but agree with the latter.

-14-

Pursuant to *Arizona v. Gant*, 556 U.S. 332, 351, 129 S. Ct. 1710, 1723, 173 L. Ed. 2d 485 (2009), "[p]olice may search a vehicle incident to a recent occupant's arrest only if the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of arrest." Here, Vincent was placed in a police cruiser and not within reaching distance, so a search was not permissible upon this basis. *Rose v. Commonwealth*, 322 S.W.3d 76, 80 (Ky. 2010) ("Appellant was secured in the back of Hardy's cruiser. As a result, there was no possibility Appellant could have gained access to the vehicle to destroy evidence or to access a weapon.").

Also, Vincent was arrested for operating with a suspended license; thus, a subsequent search for drugs would not be reasonable for searching for evidence of the offense of arrest. *Compare Rose*, *supra* (unlawful search incident to arrest where arrested for outstanding warrants for traffic offenses and unknown other charges) *with McCloud v. Commonwealth*, 286 S.W.3d 780, 785 (Ky. 2009) (upholding automobile search because after being arrested for possession or trafficking in drugs "it was reasonable for Royse to believe that McCloud's vehicle contained evidence of the offense of arrest (*i.e.*, possession or trafficking in drugs)"). Here, Vincent only admitted that drugs were in the vehicle after his

arrest.  Accordingly, under *Gant*, the search incident to arrest exception does not apply in Vincent's case.

Alternatively, the Trial Court in the case *sub judice* held that the automobile exception permitted the warrantless search.  The automobile exception permits a warrantless search of an automobile when probable cause exists to believe the automobile contains contraband or evidence of a crime. *Commonwealth v. Elliott*, 322 S.W.3d 106 (Ky. App. 2010); *Gray v. Commonwealth*, 28 S.W.3d 316 (Ky. App. 2000).  The automobile exception to the warrant requirement "is premised upon the ready mobility of automobiles as well as the 'reduced expectation of privacy [one has] in an automobile, owing to its pervasive regulation.'"  *Dunn v. Commonwealth*, 199 S.W.3d 775, 776 (Ky. App. 2006) (quoting *Pennsylvania v. Labron*, 518 U.S. 938, 940, 116 S. Ct. 2485, 2487, 135 L. Ed. 2d 1031 (1996)).  Thus, if the car is readily mobile, and probable cause exists to believe it contains contraband, police may search the vehicle.  *Labron*, 518 U.S. at 940, 116 S. Ct. at 2487 (citations omitted).  *See also Estep v. Commonwealth*, 663 S.W.2d 213, 215 (Ky. 1983) ("Police who have a legitimate reason to stop an automobile and who have probable cause to believe that the objects of the search are concealed somewhere within the vehicle may conduct a warrantless search of the vehicle and all the compartments and containers thereof as well as the contents thereof that are not in plain view.").

-16-

Here, Vincent's statement that he had Lortab in the vehicle and his compatriot's statement that she had just obtained needles from a drug exchange created probable cause to believe the vehicle contained drugs. Further, Johnson's active warrant would indicate criminal activity. Additionally, it is not disputed that the car was readily mobile. Accordingly, the automobile exception permitted Officer Robertson to search the entire vehicle.

**IV.   The *Miranda* claim is not properly before us**.

Finally, Vincent argues that the Trial Court erred by not finding that Vincent was read his rights pursuant to *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966), after being arrested and prior to questioning. The Commonwealth responds that this issue was never presented below, it involves the Fifth Amendment, not the Fourth Amendment to the United States Constitution, and Vincent never requested factual findings regarding the same. Vincent responds that he challenged that the search of the vehicle was supported by probable cause, and his statement subsequent to his arrest and made – maybe – after not being *Mirandized* could not constitute probable cause to support the search. Notably, neither Vincent's Appellant's Brief nor his Reply Brief points us to where in the record he preserved a *Miranda* claim.

We have nonetheless reviewed the record and likewise can find no presentation of a *Miranda* claim, placing Vincent's appellate claim into that

"overwrought but irresistibly descriptive prohibition against feeding a different can of worms" to different levels of courts. *Henderson v. Commonwealth*, 438 S.W.3d 335, 343 (Ky. 2014). Parties on appeal must follow the "keystone of Kentucky appellate practice," namely that they "may only present those issues that were fully presented to the trial court and, further, may not bring forward new legal grounds on appeal to challenge those errors." *Id*. We permit Trial Courts to be given the first opportunity to resolve an issue, as the Trial Court may be able to avoid the need for an appeal. *Id*. at 343-44. This *Miranda* claim is a completely different can of worms than what was ever presented below to the Trial Court. Accordingly, it is not properly before us.

Even if it were properly before us, under the totality of the circumstances, there was substantial evidence that supported probable cause without Vincent's statement regarding Lortabs – his fellow occupant's admission that she had obtained needles to use for drugs, coupled with the initial report of suspected drug use, a report that came from a non-anonymous source who had experience with drug use due to her husband's drug addiction. *Moore v. Commonwealth*, 159 S.W.3d 325, 329 (Ky. 2005) (citation omitted) ("the test for probable cause is whether there is a fair probability that contraband or evidence of a crime will be found in a particular place"). Thus, we find no error with the Trial Court's order denying the motion to suppress.

-18-

**CONCLUSION**

The Trial Court properly held that the mistake of law was objectively reasonable and supported the initial seizure. Subsequently, and considering the totality of the circumstances and the fact that the automobile was readily mobile, there was probable cause to support the subsequent vehicular search under the automobile exception. The Trial Court's order is AFFIRMED.

COMBS, JUDGE, CONCURS.

EASTON, JUDGE, CONCURS AND FILES SEPARATE OPINION.

EASTON, JUDGE, CONCURRING: "[T]he ultimate touchstone of the Fourth Amendment is 'reasonableness'[.]" *Brigham City, Utah v. Stuart*, 547 U.S. 398, 403; 126 S. Ct. 1943, 1947, 164 L. Ed. 2d 650 (2006). In the context of Officer Robertson's stop of Vincent's vehicle, we are required to assess reasonableness of the officer's suspicion of criminal activity considering the "totality of the circumstances." *Bauder v. Commonwealth*, 299 S.W.3d 588, 591 (Ky. 2009). I agree with the result reached in this case but write separately to express concern about the limitations of the "mistake of law" doctrine applied in *Heien v. North Carolina*, 574 U.S. 54, 135 S. Ct. 530, 190 L. Ed. 2d 475 (2014).

*Heien* did not involve the effective date of a law. Rather, the issue was interpretation of a law in effect. Because North Carolina statutory references conflicted, the officer attempting to enforce a provision about lights on the back of

a vehicle acted reasonably when he stopped a vehicle with only one such operative light.  Only after his actions had occurred did a court determine his understanding of the law was a mistake.  It was debatable.  The Court in *Heien* expanded an existing precedent which had upheld a seizure where an officer followed a law as written, but the law was later held unconstitutional.  Since laws have a presumption of validity, it was reasonable for the officer to apply it at the time of the seizure.  *Michigan v. DeFillippo*, 443 U.S. 31, 37, 99 S. Ct. 2627, 2632, 61 L. Ed. 2d 343 (1979).

As the majority Opinion notes, Chief Justice Roberts warned that *Heien* should "not discourage officers from learning the law."  *Heien*, *supra*, at 66, 135 S. Ct. at 530.  An officer cannot gain "advantage through a sloppy study of the laws he is duty-bound to enforce."  *Id*. at 67, 135 S. Ct. at 539-40.  The concurring opinion in *Heien* further quoted the Solicitor General from the oral arguments that the problem with a statute "must pose a 'really difficult' or 'very hard question of statutory interpretation.'"  *Id*. at 70, 135 S. Ct. at 541.  Mistake of law cases will be "exceedingly rare."  *Id*.

Kentucky Constitution § 55 has determined the effective dates of laws in Kentucky for over 130 years.  Kentucky's rule is typical of how the states decide the effective dates of their laws.  *See* 2 SHAMBIE SINGER, *Sutherland Statutory Construction* § 33:2 (8th ed. 2022).  The effective date is easily ascertained from

-20-

available legislative resources. Every year, Kentucky law enforcement officers must educate themselves on which laws became effective immediately due to emergency provisions and which will become effective ninety days after the adjournment of the General Assembly.

In *Heien*, the Court commented on the more forgiving standard for an officer's mistakes in the context of 42 United States Code (U.S.C.) § 1983 civil actions. *Heien*, *supra*, at 539, 135 S. Ct. at 65. I mention this because the only case I have found addressing a similar mistake about the effective date of a law was in this more forgiving context. *J Mack LLC v. Leonard*, No. 2:13-cv-808, 2015 WL 519412, at *9 (S.D. Ohio Feb. 9, 2015). Like the present case, the arresting officer in *Leonard* relied upon a conversation with another officer which left him with the impression that the new law may have been in effect. The Court held it was "objectively unreasonable" to rely on a law not yet in effect; the effective date was not a matter about which reasonable minds could disagree. *Id*.

Unlike the confusing North Carolina statutes applied in *Heien*, KRS 189.040(14)(a) is not confusing. After this law became effective, lights installed by owners on the front of vehicles could not be red. Kentucky Constitution § 55 provides citizens and law enforcement personnel the opportunity to learn about new laws before they go into effect. It also gives citizens time to take corrective

action to become compliant with the law, such as removing non-complying lights before the law goes into effect.

If the stop of the vehicle in this case was based solely on Officer Robertson's mistaken belief about the effective date of the law, this is not a mistake of law made excusable by *Heien*. Even so, I conclude the officer had the required reasonable and articulable suspicion of criminal activity to stop the vehicle. This is because of the known informant's report of the behavior of Vincent and Officer Robertson's almost simultaneous observation of the persons at the reported location and in the vehicle where the officer would expect to find it based on the informant's report. This was enough alone to justify the stop on a suspicion of drug use with the potential for impairment in the operation of a vehicle. *See Commonwealth v. Kelly*, 180 S.W.3d 474 (Ky. 2005).

When the totality of the circumstances is considered in this case (perhaps even including the officer's uncertainty about the effective date of the new law – an honest mistake), the stop of the vehicle was reasonable under the Fourth Amendment. The subsequent developments, as already recounted by the majority Opinion, justified the further actions by the officer. The suppression of evidence was properly denied. I would affirm on these grounds.

BRIEFS FOR APPELLANT:   BRIEF FOR APPELLEE:

Shannon Dupree      Daniel Cameron
Frankfort, Kentucky     Attorney General of Kentucky

           Courtney J. Hightower
           Assistant Attorney General
           Frankfort, Kentucky