RENDERED: JANUARY 23, 2026; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-1109-DG

COMMONWEALTH OF KENTUCKY                                    APPELLANT

v.
ON REVIEW FROM CALLOWAY CIRCUIT COURT
HONORABLE ANDREA L. MOORE, JUDGE
ACTION NO. 23-XX-00001

WILLIAM MICHAEL MCCUISTON                                    APPELLEE

OPINION
REVERSING

** ** ** ** **

BEFORE: THOMPSON, CHIEF JUDGE; EASTON AND L. JONES, JUDGES.

EASTON, JUDGE: In this driving under the influence (DUI) of alcohol case, the

Calloway District Court denied the Appellee's (McCuiston) motion to suppress

evidence. McCuiston entered a conditional guilty plea. The Calloway Circuit

Court reversed. We granted discretionary review. Because the Calloway Circuit

Court erred by failing to accept the factual findings of the district court as well as

by misapplication of the law, we reverse the circuit court and reinstate the district court's judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

In the early morning hours of October 29, 2022, Officer Griffin Deese (Deese) with the Murray City Police Department responded to a report of shots fired near Tap 216, a local bar in Murray, Kentucky. As Deese investigated, it became clear that the report probably resulted from some other noise in the vicinity, and no criminal activity was ever determined to have occurred.

Deese was wearing a body camera that night. While Deese spoke with employees outside of Tap 216 about the shots-fired report, the camera was facing the employees and the entrance of the bar. An exchange among the employees and Deese about McCuiston changed the focus of the police activity from the shots-fired report to an eventual DUI arrest.

McCuiston exited the bar. As McCuiston got into his vehicle, the employees made the following statements referring to McCuiston: "Oh, he better not be. Ah, don't do it dude. S***, you f***ing fool." Deese asked the employees: "Has he been drinking?" One employee says, "Yeah" followed

immediately by another employee saying, "Yeah, a lot."[1] Deese testified that he saw McCuiston stumble while in the parking lot.[2]

Deese can be seen entering his police vehicle to follow McCuiston. As he started to follow McCuiston, Deese called in to his dispatcher saying, "behind a possible intoxicated driver."[3] Deese did not remember whether McCuiston gave a turn signal as he turned out of the Tap 216 parking lot and eventually onto University Drive. There was no dash camera recording, and the body camera showed only the steering wheel while Deese drove.

University Drive is a two-lane road that oddly becomes four lanes as it intersects with 16th Street. We have created a composite drawing based on photographs in the record. This drawing may not be to perfect scale, but it should assist in understanding this intersection. We have attached the drawing as an appendix to this Opinion.

---

[1] This conversation appears at the Video Record (VR) for January 25, 2023, at 9:35:00 – 9:35:50.

[2] The body camera video was recorded at night and is somewhat grainy. We can see McCuiston walking on the video, and, while we see his slow or perhaps uncertain gait as he left the bar, we cannot see all the way until McCuiston got into his vehicle because of a movable fence gate and a vehicle partially blocking the view. The body camera was pointed in the direction Deese's torso was facing as he interacted with the employees. This does not mean that Deese did not look over and see McCuiston "stumble." At any rate, such a factual finding was for the district court to make, not the circuit court, depending on whether the district court judge believed Deese.

[3] VR, January 25, 2023, at 9:36:50.

As the single westbound lane of University Drive approaches 16th Street, that lane is split by a grassy area. The driver must continue to his right or veer to the left. If the driver veers to the left, then another, smaller grassy area splits that lane again to allow a left turn onto southbound 16th Street. This second split also allows for a left turn off southbound 16th Street to go eastbound on University Drive. Such a driver would have to yield before crossing the remaining westbound lane of University Drive to travel eastbound. The opposite, eastbound lane of University Drive enters off northbound 16th Street as a right turn. In effect, this double "Y" intersection is a modified split "T" intersection of University Drive and 16th Street.

McCuiston stayed in the westbound lane from the time he entered University Drive until he got to the stop sign to turn right onto northbound 16th Street. Although McCuiston eventually used a turn signal, he argues he was not required to signal when his lane first split nor as he reached the stop sign, because the lane he stayed in became a right-turn-only lane. The only marking on the lane where McCuiston eventually stopped is a single, short right-turn arrow at the end (not the typical long arrow, series of arrows, or other markings indicating a turn-only lane).

Deese can be heard on his radio with another officer offering to assist him. Deese responds: "That's okay. He just didn't use his turn signal right here.

-4-

So, he's about to get pulled over."[4]  Deese testified that he eventually saw McCuiston use a signal, but the signal was not used for a continuous 100 feet before the stop and turn.  McCuiston to some extent would confirm that observation.  When pulled over, McCuiston said that he used his right-turn signal, but it deactivated as he veered to the right.  He said he then turned it back on.

Upon approaching McCuiston, Deese smelled alcohol and noticed McCuiston's red eyes, which McCuiston blamed on allergies.  Deese also noticed repetition and slurred speech.  Further steps in the DUI investigation, including failed field sobriety tests, led to McCuiston's arrest.  His blood alcohol content (BAC) measured .129.  McCuiston was arrested and charged with Operating a Motor Vehicle Under the Influence of Alcohol in violation of KRS[5] 189A.010(1)(a), and "Failure to or Improper Signal" in violation of KRS 189.380.

McCuiston filed a motion to suppress in the district court, challenging the traffic stop.  He argued there was no duty to use a turn signal because he stayed in the eventual turn-only lane as he approached the intersection.  McCuiston relied heavily on a 2011 Calloway Circuit Court decision[6] in a prior, unrelated case involving a different intersection.  In this prior decision, the circuit court found the

---

[4] VR, January 25, 2023, at 9:37:42.

[5] Kentucky Revised Statutes.

[6] Calloway Circuit Court Case No. 11-XX-00001, Order entered June 23, 2011, TR at 29.

-5-

basis of a traffic stop insufficient where the driver failed to use a right-turn signal when he turned right from a right-turn-only lane.

Similarly, McCuiston maintains that he was traveling in one lane toward 16th street and never moved out of his lane of travel before reaching the stop sign. As a result, he argues he had no duty to use a turn signal at any point prior to his turn onto 16th Street (which begs the question of why he admitted using one repeatedly). McCuiston also disputed that he failed to use his turn signal continuously for at least 100 feet prior to reaching the stop sign at 16th Street. Based on what he argued was an improper traffic stop, he sought exclusion of both the field sobriety and breath test results.

The district court acknowledged the design of University Drive is unusual. When a motorist is traveling on University Drive toward 16th Street, the motorist must stay in the right lane if he intends to go right onto northbound 16th Street. If the driver wishes to go to the left (and eventually turn left onto 16th Street) then the driver must veer to the left. The questions the district court evaluated were whether McCuiston had to give a signal as he approached the first split or when he turned right at the intersection or both.

On the first question, McCuiston insisted he was not really moving to his right as much as continuing straight in his single lane that eventually turns into a right-turn-only lane. While the previously referenced 2011 circuit court decision

-6-

interpreted KRS 189.380 to not require the use of a turn signal while traveling in a right-turn-only lane, the district court acknowledged there is no statute or other caselaw supporting this interpretation. The district court was not necessarily averse to following the precedent of its circuit court, but it noted the 2011 decision did not serve as binding authority.

The district court instead reviewed first the language of KRS 189.380(1), which provides:

> A person shall not *turn* a vehicle *or move* right or left upon a roadway until the movement can be made with reasonable safety nor without giving an appropriate signal in the manner hereinafter provided.

(Emphasis added). The district court determined that, under the facts of this case, McCuiston did not violate that portion of subsection (1) about *moving* upon the roadway because he was not really moving to his right as much as he was continuing straight in his single lane that eventually became effectively a right-turn-only lane.

The district court then reviewed the language of KRS 189.380(2), which provides:

> A signal indicating the intention to *turn* right or left shall be given continuously for not less than the last one hundred (100) feet traveled by the motor vehicle before the turn.

(Emphasis added).

-7-

Finding no exceptions to this requirement, the district court determined that, even though McCuiston was in the right lane and came to a stop sign where he was required to turn right, there was no exception to the obligation to activate his turn signal at least 100 feet prior to the turn in these circumstances. Thus, Deese had observed what he believed was a traffic violation and could stop McCuiston for that violation.

The district court denied the motion to suppress. In doing so, the district court also concluded that the circumstances of the statements made about McCuiston at the bar with the combined observation of McCuiston also justified the stop: "The officer in this case had suspicion that the Defendant may be under the influence and pursued an investigation of same."[7]

Despite a drug-related non-compliance with pretrial conditions,[8] McCuiston was permitted to enter a conditional guilty plea and appealed the denial of his suppression motion to the circuit court. The circuit court determined that the investigative stop was not supported by reasonable, articulable suspicion. The circuit court based its conclusion solely on Deese's testimony on cross-examination that he could not state the exact amount of footage traveled while

---

[7] TR at 70.

[8] McCuiston was released on his own recognizance with a condition of no violations of the law. While this case was pending in the district court, as is evidenced by its mention in this record, McCuiston pled guilty to public intoxication in the McCracken District Court, Case No. 23-M-00335.

McCuiston had a turn signal on. The circuit court reversed the district court's denial of the motion to suppress.

The Commonwealth filed a Motion to Alter, Amend, or Vacate, challenging the circuit court's substitution of its findings of fact for those of the district court. The circuit court denied the motion, reasoning that, in accordance with RAP[9] 48 and *Ornelas v. United States*, 517 U.S. 690, 116 S. Ct. 1657, 134 L. Ed. 2d. 911 (1996), it is the circuit court's "responsibility to review reasonable suspicion and probable cause *de novo* on appeal while taking care both to review findings of historical fact only for clear error and to give due weight to inferences drawn from those facts by resident judges and local law enforcement officers."[10] The Commonwealth sought discretionary review in this Court, challenging both the failure to give proper deference to the district court's findings of fact, and the failure to find reasonable and articulable suspicion to stop McCuiston.

**STANDARD OF REVIEW**

The standard of review for a ruling concerning suppression is well-settled: "When reviewing a trial court's denial of a motion to suppress, we utilize a clear error standard of review for factual findings and a *de novo* standard of

---

[9] Kentucky Rules of Appellate Procedure.

[10] Calloway Circuit Court Order Denying Appellee's Motion to Alter, Amend or Vacate, R. at 118-19.

review for conclusions of law." *Jackson v. Commonwealth*, 187 S.W.3d 300, 305 (Ky. App. 2006). The trial court must have been clearly erroneous about the facts found to be reversed. A factual finding supported by substantial evidence is not clearly erroneous and is conclusive. *Hunter v. Hunter*, 127 S.W.3d 656, 659 (Ky. App. 2003) (citing *Owens–Corning Fiberglas Corp. v. Golightly*, 976 S.W.2d 409, 414 (Ky. 1998) and *Uninsured Employers' Fund v. Garland*, 805 S.W.2d 116, 17 (Ky. 1991)). "Substantial evidence means evidence of substance and relevant consequence having the fitness to induce conviction in the minds of reasonable [people]." *Woodall v. Commonwealth*, 709 S.W.3d 71, 82 (Ky. 2024), *rehearing denied* (Mar. 20, 2025) (citing *Smyzer v. B.F. Goodrich Chem. Co.*, 474 S.W.2d 367, 369 (Ky. 1971)).

We should specify the difference between deferential review of factual findings as compared with *de novo* review of legal conclusions as applied to this case. The facts in a situation like this are the determinations of historical facts – what actually happened – such as whether a turn signal was given, or what field sobriety test indicators were observed. When it comes to an assessment of probable cause that a traffic violation has occurred or the existence of a reasonable and articulable suspicion, this presents a mixed question of law and fact and is reviewed *de novo*. *Yopp v. Commonwealth*, 562 S.W.3d 290, 293 (Ky. App. 2018) (citing *Ornelas*, *supra*). Reminded of the comment by the circuit court in its

decision citing *Ornelas*, we state that the more experienced district court judge was the "resident judge" whose inferences drawn from the circumstances should have been given due weight on appeal. On discretionary review, this Court reviews the circuit court's decision to determine if it erred in its application of these principles.

## ANALYSIS

"A police officer may constitutionally conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot. *Terry v. Ohio*, 392 U.S. 1, 30, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968)." *Bauder v. Commonwealth*, 299 S.W.3d 588, 590-91 (Ky. 2009). While this broad principle applies to many situations, *Terry* did not involve a motor vehicle stop but rather an interaction with individuals standing on a street.

"[A]n officer who has probable cause to believe a civil traffic violation has occurred may stop a vehicle regardless of his or her subjective motivation in doing so." *Wilson v. Commonwealth*, 37 S.W.3d 745, 749 (Ky. 2001) (citations omitted). Officers may use an observed traffic violation as a pretext to stop a driver when the actual intent is to investigate other crimes. *Greer v. Commonwealth*, 514 S.W.3d 566, 569 (Ky. App. 2017). It is entirely possible and permissible that Deese wanted to see if McCuiston was impaired by alcohol and just used the traffic stop to further such an investigation.

-11-

So, we will start with examination of whether Deese was justified in stopping McCuiston for an observed traffic violation. We will follow that analysis with evaluation of any other reasonable and articulable suspicion to justify the stop. But before we address these issues, we reject the reliance on an old circuit court decision by the courts below. That old decision should have had no influence in this case.

## THE UNRELATED CIRCUIT COURT OPINION
## HAD NO PRECEDENTIAL VALUE

We see from comments made in the record that this prior circuit court opinion was considered as having some sort of precedential value. We can understand how local litigants and attorneys, from a practical standpoint, might rely upon a ruling in a similar case when the same circuit judge has ruled on a similar issue and there is not any clearly contrary, published, appellate opinion. But this 2011 decision was written by a judge who was no longer on the circuit bench. There is no reason to assume that subsequent judges would hold to the same legal opinion when similar cases were presented. Litigants and counsel are called upon to argue debatable legal points presented in each case. One of those cases may eventually result in an authoritative opinion from this Court or the Kentucky Supreme Court on the question presented.

As the district court judge in this case observed, SCR[11] 1.040(5) states: "On all questions of law the circuit and district courts are bound by and shall follow applicable precedents established in the opinions of the Supreme Court and its predecessor court and, when there are no such precedents, those established in the opinions of the Court of Appeals." There is no authority to support the proposition that a circuit court opinion, especially one entered by a judge no longer on that bench, has precedential value.

Relatedly, we note that throughout the proceedings below, there seems to have been a desire to obtain direction from appellate courts on the general question of when a turn signal is required. Comments like "taking it up" were made. While we will address the question of a required turn signal as applied to the facts of *this* case, we will not give a general advisory opinion. We are constitutionally prohibited from issuing advisory opinions. *See, e.g.*, *Deramos v. Anderson Communities, Inc.*, 709 S.W.3d 197, 200 (Ky. 2025). Our discussion of the legal standard for a turn signal as it applies to this case may arguably apply to other situations, but we will not adopt nor reject the 2011 circuit court decision through this case.[12]

---

[11] Kentucky Supreme Court Rules.

[12] We have already spoken on this issue. In *Valesquez v. Commonwealth*, 362 S.W.3d 346 (Ky. App. 2011), this Court did not question the validity of a traffic stop done for the "sole reason" of a failure to signal to turn left from a left-turn-only lane, although that issue was not addressed in

## McCUISTON WAS REQUIRED TO GIVE A SIGNAL

Prior to the enactment of KRS 189.380, turn signals were governed by Kentucky Statutes, Section 2739g-50. That statute required a signal only "if it appears that the movement or operation of another vehicle or other vehicles may reasonably be affected" by the intended movement of the signaling vehicle. *Marsee v. Bates*, 29 S.W.2d 632, 634 (Ky. 1930). It could become a jury question as to whether this statutory language was violated in given circumstances. This standard may have made sense in 1930, but there are a great many more vehicles now, almost 100 years later.

Even then, the duty to give a signal was not limited to the purpose of warning vehicles *behind* the driver. The duty is "for the protection of all vehicle[s] whose movements may reasonably be affected by the change in direction." *Lindig v. Breen*, 103 S.W.2d 941, 943 (Ky. 1937). Other drivers "must use ordinary care to keep their trailing or on-coming vehicles under such control as to avoid coming into collision with the vehicle from which the signals were given, while it is turning, stopping or changing its course as indicated[.]" *Wright v. Clausen*, 89 S.W.2d 1062, 1064 (Ky. 1934); 104 A.L.R. 480 (Nov. 2025 update).

---

any detail because of more pressing concerns about the seizure of evidence from the vehicle, which had led to a remand by the United States Supreme Court. *Id*. at 347.

-14-

Over the years of ever increasing traffic, the "wiggle room" of who might be "reasonably affected" has been removed from the statute. The law now requires a signal continuously for at least 100 feet before making a turn. KRS 189.380(2). There are no stated exceptions.

McCuiston still complains that he never changed direction. The officer behind him would have known that McCuiston was eventually in a right-turn-only lane. Again, vehicles behind a driver are not the only reason for signals. This ignores the rest of the reasons for signals – notice to all nearby drivers.

Any driver entering or traveling in the opposite lane of University Drive would be notified by a signal if a driver comes closer to that driver by veering to the left to shortly turn left onto 16th Street or is moving away from that driver by going to the right. Drivers behind a driver approaching the first split would be notified by a signal if the vehicle in front of them was going left or right. Those following drivers could adjust speed and following distance in response to a signal.

Thus, we may question the district court's legal conclusion that no signal was required when McCuiston went right instead of left at the initial road split, but that is arguable since, in this situation, McCuiston did not necessarily *move* to the right as he stayed in his lane. We need not decide this question and will instead focus on the second conclusion as this was the reasoning ultimately

relied upon by the district court. The statute required McCuiston to give a signal of his turn onto 16th Street.

Whichever direction drivers may have been traveling on 16th Street, they should receive notice of a vehicle intending to enter that street and from what direction it was going to enter. We cannot assume that all drivers on 16th Street are familiar with the unusual configuration of University Drive. We also recall testimony in this record that vehicles have been known to turn left onto 16th Street from this supposed right-turn-only lane on University Drive.

We note briefly the place of prosecutorial discretion. As part of the executive branch, the police may choose not to bring certain charges. All lead-footed Kentuckians have escaped charges because of this. Every motorist going one mile-per-hour over the speed limit is violating the law, but the police are not required to stop and cite every such driver. If they were, we would need a lot more patrol officers. Similarly, officers may choose not to use their limited resource of time to generally enforce turn signal compliance in turn-only lanes, when there is "no harm, no foul" observed. This does not mean that the law prohibits officers from using such an observed violation to further a DUI investigation.

### DEESE HAD PROBABLE CAUSE TO BELIEVE MCCUISTON FAILED TO SIGNAL AS REQUIRED

Having determined that the law required McCuiston to give a signal of his intention to turn right onto 16th Street, the question becomes whether Deese

-16-

had probable cause to believe a traffic violation had occurred. The standard is not proof beyond a reasonable doubt of the violation. It is absurd to suggest that Deese should have had a tape measurer with him and used it to be sure of the exact distance of any turn signal given by McCuiston. *If* that charge had gone to trial, such evidence might have been gathered based on Deese's observations to prove guilt beyond a reasonable doubt. But we are talking about probable cause, not guilt.

The district court, after hearing testimony at the suppression hearing, made the following statement: "The Officer's testimony was that the Defendant did not turn on his signal at least 100 feet before the intersection." Noting there was some dispute in the evidence whether McCuiston had in fact turned on his signal just prior to turning on 16th Street, the district court accepted Deese's testimony and then concluded: "The officer in this case lawfully stopped the Defendant for a violation of KRS 189.380(2)."[13]

The circuit court reassessed Deese's testimony and focused on the fact he could not state the precise distance McCuiston traveled before any signal was engaged. While Deese could not state the exact distance, he clearly testified that McCuiston did not use a signal for a continuous 100 feet before the turn. He based this on his observation, training, and experience as a patrol officer. This was

---

[13] Calloway District Court Order entered March 21, 2023, R. at 53.

sufficient evidence to support the district court's factual determination and subsequent conclusion that there was probable cause to believe McCuiston violated the statute. The district court acted as the factfinder and was entitled to consider the weight and credibility of Deese's testimony. The circuit court was tasked to determine whether this at least 100-foot fact-finding determination was supported by substantial evidence, which it clearly was, not to reevaluate the evidence or substitute its judgment as to the credibility of Deese.

Even if Deese was mistaken as to the exact distance traveled before the turn signal was activated, the stop was still valid. We have recognized that a reasonable belief, even if it is mistaken, can justify an investigative stop. "The constitutional validity of a stop is not undermined simply because the officers who made the stop were mistaken about relevant facts." *Benton v. Commonwealth*, 598 S.W.3d 102, 106 (Ky. App. 2020) (citations omitted).

The ultimate disposition of the traffic offense charge is not determinative. It does not matter whether guilt of that charge is eventually admitted or proven. We can illustrate this with *Greer*, *supra*. In *Greer*, the officer thought that the window tint on a vehicle was too dark. He stopped the driver for that reason. Eventually, the tint was found to be within the statutory limits and was not a violation, and a grand jury did not charge the driver with that offense. This

does not change the equation of whether probable cause existed to stop the driver to investigate such a violation. *Greer*, 514 S.W.3d at 568-69.

## DEESE HAD A REASONABLE, ARTICULABLE SUSPICION THAT McCUISTON WAS DRIVING UNDER THE INFLUENCE

An appellate court may affirm a decision for any reason supported by the record. *Kentucky Farm Bureau Mut. Ins. Co. v. Gray*, 814 S.W.2d 928, 930 (Ky. App. 1991). It is contrary to the important public policy of judicial economy to reverse cases because the reason relied upon by the trial court was erroneous when other reasons in the record require the same result. Appellate courts are called upon to look for reasons to affirm rather than stretch for reasons to reverse. In this light, the circuit court did not consider the obvious other ground to affirm the district court – regardless of the turn signal issue – Deese had reasonable and articulable suspicion for a DUI stop.

A reasonable suspicion is more than an "unparticularized suspicion or 'hunch.'" *Bauder*, *supra*. Reasonable suspicion, while requiring less of a showing than probable cause, requires at least a minimal level of objective justification for making the stop.[14] Accordingly, the stop of an automobile and the resulting detention of the driver are unreasonable, under the Fourth Amendment, absent a reasonable, articulable suspicion that the driver is unlicensed, or that the

---

[14] *United States v. Sokolow*, 490 U.S. 1, 7, 109 S. Ct. 1581, 1585, 104 L. Ed. 2d 1 (1989).

automobile is not registered, or that either the vehicle or an occupant is otherwise subject to seizure for violation of the law.[15] Courts must consider the totality of the circumstances in determining whether a police officer had a particularized and objective basis for suspecting that a person stopped may be involved in criminal activity.[16]

Deese received information from employees of Tap 216 that McCuiston had been drinking "a lot." In addition, he observed McCuiston stumble across the parking lot, then drive away in his vehicle. These facts alone were enough to give rise to a reasonable suspicion that McCuiston was driving under the influence of alcohol. Although officers may wait for the frequent traffic infractions committed by impaired drivers to further justify a stop, an officer is not required to observe erratic driving to have sufficient suspicion to conduct a DUI stop. Observation of impaired driving is not even required to prove a DUI charge. *Hayden v. Commonwealth*, 766 S.W.2d 956 (Ky. App. 1989).

The Kentucky Supreme Court has confirmed that information personally given to an officer by an identified citizen in the area can be sufficient to support an articulable suspicion that criminal activity was afoot, and thus, justify

---

[15] *Delaware v. Prouse*, 440 U.S. 648, 663, 99 S. Ct. 1391, 1401, 59 L. Ed. 2d 660 (1979).

[16] *United States v. Cortez*, 449 U.S. 411, 417-18, 101 S. Ct. 690, 695, 66 L. Ed. 2d 621 (1981).

stopping a suspect's car. The contemporaneous statements made by the Tap 216 employees alone were sufficient to justify a DUI stop. *Commonwealth v. Kelly*, 180 S.W.3d 474 (Ky. 2005). Here, the statements of the employees of Tap 216 were coupled with Deese's own observations of McCuiston in the parking lot. The DUI stop was justified separate from the turn signal issue.

The omission of the information about the statements by the bar employees and the stumbling from the citation is not somehow fatal to the existence of the DUI suspicion. Citations are not required to be books containing every conceivable detail. And omission from a citation does not erase other evidence. McCuiston could argue that the omission should have impacted the credibility of Deese, but the record clearly supported the suspicion offered by Deese at the hearing through the body cam recording. In any event, again, it was for the district court to assess credibility, and there was not clear error in the findings of the district court. On the mixed question of reasonable suspicion, this record clearly sustains the existence of a reasonable and articulated suspicion of DUI, which separately justified the stop. The circuit court erred in finding there was no such reasonable, articulable suspicion.

## CONCLUSION

The circuit court improperly disregarded the district court's findings of fact supporting the conclusion that McCuiston was lawfully stopped for

violation of KRS 189.380(2), because the findings were supported by substantial evidence. In addition, there was at least probable cause for a stop due to the signal issue and reasonable, articulable suspicion of criminal activity (DUI) independent of the turn signal issue to justify the traffic stop. The district court correctly denied McCuiston's motion to suppress. We REVERSE the Calloway Circuit Court and REINSTATE the Judgment of the Calloway District Court based upon its Order denying McCuiston's Motion to Suppress Evidence.


ALL CONCUR.


BRIEFS FOR APPELLANT:

Russell Coleman
Attorney General of Kentucky

J. Grant Burdette
Assistant Attorney General
Frankfort, Kentucky

BRIEF FOR APPELLEE:

Gary R. Haverstock
Murray, Kentucky

